

1 GOLDBERG, STINNETT, MEYERS & DAVIS
  A Professional Corporation
2 TERRANCE L. STINNETT, ESQ. CA Bar #46010
  DANIEL M. LINCHEY, ESQ. CA Bar #111739
3 YOSHIE VALADEZ, ESQ. CA Bar #212994
   44 Montgomery Street, Suite 2900
4 San Francisco, CA  94104
  Telephone: (415) 362-5045
5 Facsimile:  (415) 362-2392

6 Attorneys for Plaintiff Andrea A. Wirum, Trustee

7

8              IN THE UNITED STATES BANKRUPTCY COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                   SAN FRANCISCO DIVISION

11

12 In re:                                    Case No. 04-32952-TEC

13 FLETCHER HARTWELL HYLER, aka             Under Chapter 11
   BUD H. HYLER,
14
                Debtor.
15

16 ANDREA A. WIRUM, TRUSTEE,               A.P. No.

17               Plaintiff,

18 vs.

19 INVESTMENT GRADE LOANS, INC.,
   LINCOLN TRUST COMPANY FBO
20 DOUG PICKERING, IRA, CHERN S. LIN,
   FELICIA LIN, JANICE TEMPEY, ROY S.
21 WOLF, THOMAS C. O'CONNELL, JR.
   JANICE K. O'GRADY, PENSCO TRUST
22 COMPANY AS CUSTODIAN FBO JOHN
   A. SNYDER IRA, PENSCO TRUST
23 COMPANY AS CUSTODIAN FBO PHIL
   AHLFELDT, IRA, AND JOHN STEVENS
24
                Defendants
25

26              **EXHIBITS "A" THROUGH "F" TO**
27 **COMPLAINT FOR DISALLOWANCE OF CLAIM, AVOIDANCE OF SECURITY INTEREST IN**
   **RESIDENCE, ACTUAL DAMAGES, STATUTORY PENALTIES, COSTS AND ATTORNEY'S FEES**
28
                              -1-
   EXHIBITS TO COMPLAINT FOR DISALLOWANCE OF CLAIM, AVOIDANCE OF SECURITY INTEREST IN RESIDENCE, ACTUAL
   DAMAGES, STATUTORY PENALTIES, COSTS AND ATTORNEY'S FEES

   10185/107262.DOC

LAW OFFICES
GOLDBERG, STINNETT, MEYERS & DAVIS
A PROFESSIONAL CORPORATION
44 MONTGOMERY STREET, SUITE 2900
SAN FRANCISCO, CALIFORNIA  94104

1    October 13, 2006

2                                    GOLDBERG, STINNETT, MEYERS & DAVIS
                                     A Professional Corporation
3

4                                    _Terrance L. Stinnett_

                                 By: _____/s/ Terrance L. Stinnett_____
5                                    Attorneys for Plaintiff Andrea A. Wirum,
                                     Trustee
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
GOLDBERG, STINNETT, MEYERS & DAVIS
A PROFESSIONAL CORPORATION
44 MONTGOMERY STREET, SUITE 2900
SAN FRANCISCO, CALIFORNIA 94104

-2-
EXHIBITS TO COMPLAINT FOR DISALLOWANCE OF CLAIM, AVOIDANCE OF SECURITY INTEREST IN RESIDENCE, ACTUAL
DAMAGES, STATUTORY PENALTIES, COSTS AND ATTORNEY'S FEES

10185/107262.DOC

# NOTE SECURED BY A DEED OF TRUST

Loan No : 0402022

Date : February 19, 2004,    LOS ALTOS, Californi

5070 Alpine Road, Portola Valley, CA 94028 - Property Address

## 1.  BORROWER'S PROMISE TO PAY

In Return for a loan that I have received, I promise to pay U.S. One million Two hundred Thirty-Two thousand Five hundred exactl
($1,232,500.00) (this amount will be called "principal"), plus interest, to the order of See Exhibit "B", (who will be called "Lender").
understand that the Lender may transfer this Note.  The Lender or anyone else who takes this Note by transfer and who is entitled t
receive payments under this Note will be called the "Note Holder(s)."

## 2.  INTEREST

I will pay interest at a yearly rate as described in Section 3 below.
Interest will be charged on unpaid principal until the full amount of principal has been paid.
I also agree to pay interest at the rate described in Section 3 below on the prepaid finance charges which are a part of the principal.

## 3.  PAYMENTS

My payments are XX Interest Only Fully Amortized  Other
I will make payments each month as follows:

*CERTIFIED TO BE A TRUE
AND CORRECT COPY
CHICAGO TITLE INSURANCE CO.*

| Number of Payments | Payment Start Date | Interest Rates | Payment Amounts |
|---|---|---|---|
| 60 | April  1, 2004 | 16.000% | $16,433.33 |
| 1 | April  1, 2009 | 16.000  % | $1,248,933.33 |
| | | % | $ |
| | | % | $ |
| | | % | $ |
| | | % | $ |

I will make these payments until I have paid all of the principal and interest and any other charges that I may owe under this Note. ]
on April  1, 2009 (the Due Date) I still owe amounts under this Note (balloon balance), I will pay all those amounts, in full, on that date.
I will make my payments payable to INVESTMENT GRADE LOANS, INC. 289 S. SAN ANTONIO ROAD #202 LOS ALTO:
CA 94022 or at a different place if I am notified by the Note Holder or the Agent for the Note Holder.

## 4.  BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge of Overdue Payments  If I do not pay the full amount of each monthly payment by the end of 10 calendar day
after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be  10.00% of my overdue payment c
U.S. $5.00, which ever is more.  I will pay this late charge only once on any late payment.
In the event a balloon payment is delinquent more than 10 days after the date it is due, I agree to pay a late charge in an amount equa
to the maximum late charge that could have been assessed with respect to the largest single monthly installment previously due, othe
than the balloon payment, multiplied by the sum of one plus the number of months occurring since the late payment charge began t
accrue.

(B) Default

If I do not pay the full amount of each monthly payment due under this Note by the date stated in Section 3 above, I will be i
default, and the Note Holder may demand that I pay immediately all amounts that I owe under this Note.

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Not
Holder will still have the right to do so if I am in default at a later time.  In the event I am in default I agree to pay interest at the rat
of three (3%) percent in excess of the interest rate set forth in Section 3.  A default of any obligation of Borrower to Lender sha
constitute a default in all obligations of Borrower to Lender.

(C) Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid bac
for all its costs and expenses to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorne
fees.  A default upon any interest of any Note Holder shall be a default upon all interests.

## 5.  BORROWER'S PAYMENTS BEFORE THEY ARE DUE - PREPAYMENT PENALTIES

I have the right to make payments of principal at any time before they are due.  A payment of principal only is known a
"prepayment."  If I pay all the loan principal before it is due, whether such payment is made voluntarily or involuntarily, I agree to pay
prepayment penalty computed as follows:  Security Instrument describes how and under what conditions I may be required to mak
immediate payment in full of all amounts that I owe under this Note.

Some of those conditions are described as follows: There is no Prepayment Penalty.  Loan can be partially or fully repaid at any time

## 6.  BORROWER'S WAIVERS

I waive my rights to require the Note Holder to do certain things.  Those things are: (a) to demand payment of amounts due (know
as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); (c) to obtain an offici
certification of nonpayment (known as "protest").  Anyone else who agrees to keep the promises made in this Note, or who agrees t
make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else, als
waives these rights.  These persons are known as "guarantors, sureties and endorsers."

# EXHIBIT "A"

7.   **RESPONSIBILITY OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each of us is fully and personally obligated to keep all of the promises made in this including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to d these thing. Any person who takes over these obligations, including the obligations of the guarantor, surety, or endorser of this Note, i also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each perso individually or against all of us together. This means that anyone of us may be required to pay all of the amounts owed under this Note.

8.   **THIS NOTE IS SECURED BY A DEED OF TRUST**

In addition to the protection given to the Note Holder under this Note, a Deed of Trust (the "Security Instrument") with a Due-on Transfer Clause dated the same date of this Note, protects the Note Holder from possible losses which might result if I do not keep th promises which I make in the Note. That Security Instrument describes how and under what conditions I may be required to mak immediate payment in full of all amounts that I owe under this Note.

Some of those conditions are described as follows:

"Lender's Right to Require The Loan to be Paid Off Immediately. If the borrower shall sell, enter into a contract of sale, lease for term of more than 6-years (including options to renew), lease with an option to purchase for any term, or transfer all or part of th Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) or a transfer b devise, descent, or by operation of law upon the death of a joint tenant, the Lender may, at its option declare the Note and any othe obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable, in full. No waiver of th Lender's right to accelerate shall be effective unless it is in writing."

| | |
|---|---|
| _Fletch H. Hyler_ | 2/1/04 |
| Fletcher H. Hyler - Borrower | Dat |
| _Sheryl S. Root-Hyler by F. H. Hyler attorney-in-fact_ | 2/20/04 |
| Sheryl S. Root-Hyler - Borrower | Dat |
| | |
| - Borrower | Dat |
| | |
| - Borrower | Dat |

**SPECIAL NOTICE TO ASSIGNEES REGARDING THIS MORTGAGE**

Notice: This is a mortgage subject to special rules under the federal Truth in Lending Act. Purchasers or assignees of this mortgage could be liable for all claims and defenses with respect to the mortgage that the borrower could assert against the creditor

# ASSIGNMENT OF NOTE
# SECURED BY A DEED OF TRUST

Date:

FOR    VALUE    RECEIVED,    the    undersigned    hereby    grants,    assigns    and    transfers    t , all beneficial interest under the within Note, without recourse, and Deed of Trust securing same.

**DO NOT DESTROY THIS NOTE:** When paid it must be surrendered to the Trustee, together with the Deed of Trust securing same fo cancellation, before reconveyance will be made.

S32-NOTE.DOC

# EXHIBIT "B"

TO NOTE SECURED BY A DEED OF TRUST DATED FEBRUARY 19, 2004 TO
FLETCHER H. HYLER AND SHERYL S. ROOT-HYLER
IN THE AMOUNT OF $1,232,500.00 IN FAVOR OF THE FOLLOWING
BENEFICIARIES:

Lincoln Trust Company, Custodian FBO Doug Pickering, IRA as to an undivided 740/12325
interest,

Chern S. Lin and Felicia Lin, husband and wife as community property as to an undivided
3000/12325 interest,

Janice Tempey and Roy S. Wolf, husband and wife as community property as to an
undivided 2600/12325 interest,

Thomas C. O'Connell, Jr. and Janice K. O'Grady, husband and wife as community property
as to an undivided 1235/12325 interest,

Pensco Trust Company, Custodian FBO John A. Snyder IRA, as to an undivided 750/12325
Interest,

Pensco Trust Company, Custodian FBO Phil Ahlfeldt, IRA, as to an undivided 3000/12325
interest

John Stevens, an unmarried man as to an undivided 1000/12325 interest.

RECORDING REQUESTED BY
WHEN RECORDED MAIL TO

INVESTMENT GRADE LOANS, INC.
289 S. SAN ANTONIO ROAD #202
LOS ALTOS, CA 94022



2004-038332

CHICAGO TITLE I... URANCE COMPANY
08:00am 03/03/04 DT Fee: 40.00
Count of pages 12
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

```
* 2 0 0 4 0 0 3 8 3 3 2 A R *
```

RECORDER: INDEX FOR SPECIAL NOTICE

# DEED OF TRUST

12p.

Loan No. 0402022

    This Deed of Trust ("Security Instrument"), made this date February 19, 2004. Trustor is Fletcher H. Hyler and Sheryl S. Root-Hyler, husband and wife, as community property ("Borrower"). The Trustee Investment Grade Loans, ("Trustee"). The Beneficiary, See Exhibit "B", whose address is 289 S. SAN ANTONIO ROAD #202, LOS ALTOS, CA 94022 ("Lender").

    **BORROWER**, owes Lender the principle sum of (U.S. $1,232,500.00).

    This debt is evidenced by Borrower's note dated the same as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on April 1, 2009. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in San Mateo County, California: which has the address of : 5070 Alpine Road, Portola Valley, CA 94028 ("Property Address"); Legal Description: See Exhibit A ; APN #: 076-350-220

    **TOGETHER WITH** all the improvements now or hereafter erected on the property, and all easements, appurtenances, and all fixtures now or hereafter to the property. All replacements and additions shall be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property";

    **BORROWER COVENANTS** that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property, that the Property is unencumbered except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

### BORROWER AND LENDER COVENANT AND AGREE AS FOLLOWS:

    **1. Payments of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due, the principal of and interest on the debt evidenced by the Note, prepayment and late charges as provided in the Note.

    **2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by the Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leaseholder payments of ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items". Lender may, at any time, collect and hold Funds in any amount not to exceed the maximum amount a lender for a federally related loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. -2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time , collect and hold Funds due on the basis of current data and reasonable estimates of future Escrow Items or otherwise in accordance with applicable law.

    The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be require to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Fund was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

    If the Funds held by Lender exceed the amount permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

# EXHIBIT "B"

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. this insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by; Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewal shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or material impairment of the lien created by this Security Instrument or false inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value or the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instruments, appearing in court, paying reasonable attorney's fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept,

option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taken of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount to the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which set maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notice.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred ( or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for

enforcing this Security Instrument. The conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonable require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity ( known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of and Hazardous substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property on small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**BORROWER AND LENDER FURTHER COVENANT AND AGREE AS FOLLOWS:**

**21. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default to any other defense of borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sole. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by applicable law to Borrower and to the other person prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser a Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**22. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or Persons shall pay any recordation costs.

**23. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereinabove by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maxi..um amount permitted by law for furnishing
the statement of obligation as provided by section 2943 of the Civil Code of California.

**26. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this
Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the
covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

___XX___ 1-4 Family Rider     ___ Condominium Rider     ___ Planned Unit Development Rider

___XX___ Security Rider     Other(s) *specify:*

# REQUEST FOR SPECIAL NOTICE OF DEFAULT AND FORECLOSURE
## UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed or trust or other encumbrance with a lien which has priority over
this Security Instrument to Notice Lender care of Lender's Servicing Agent, at its address set forth on page one of this Security
Instrument, of any default under the superior encumbrance and of any sale or other foreclosure action.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants by contained in this Security Instrument and in
any rider(s) executed by Borrower and recorded with it.

_____        2/2?/04
Fletcher H. Hyler - Borrower           Dated

_____        2/20/04
Sheryl S. Root-Hyler - Co-Borrower        Dated

STATE OF CALIFORNIA <u>San Mateo</u> County ss.
On _____ before me, the undersigned, a Notary Public in and for said State, personally appeared
_____ 
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the
within instrument, and acknowledge to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by
his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted. executed the instrument.
WITNESS my hand and official seal.

_____        Dated ____
Notary's Signature

Name (typed or printed) _____

My Commission Expires _____

> SHARON E. LA FOUNTAIN
> Commission # 1403418
> Notary Public - California
> Santa Clara County
> My Comm. Expires Mar 31, 2007

(This area for official notarial seal)

# REQUEST FOR FULL RECONVEYANCE

TO TRUSTEE:

The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all other indebtedness secured by this Security Instrument, have been paid in full. You are hereby directed to cancel said note or notes and this Security Instrument, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Security Instrument to the person or persons legally entitled thereto.

Dated:

("Lender")

When recorded, mail to INVESTMENT GRADE LOANS, INC., 289 S. SAN ANTONIO ROAD #202, LOS ALTOS, CA 94022

Att: <u>Recon department</u>

K_DEED.DOC

# ILLEGIBLE NOTARY SEAL DECLARATION

## (GOVERNMENT CODE 27361.7)

I declare under the penalty of perjury that the notary seal on the
document to which this statement is attached, reads as follows:

NAME OF NOTARY PUBLIC: _Sharon E. La Fountain_

COMMISION NUMBER: _1403418_

NOTARY PUBLIC STATE: _California_

COUNTY: _Santa Clara_

MY COMM. EXPIRES: _3-31-07_

SIGNATURE OF DECLARANT: _Amy_

PRINT NAME OF DECLARANT: _Amy Anderson_

CITY & STATE OF DECLARATION: _Walnut Creek, California_

DATE SIGNED: _3-1-04_

THE ABOVE INFORMATION MUST BE LEGIBLE FOR SCANNING

Order No. 238092 - TO1

**LEGAL DESCRIPTION**
EXHIBIT / SCHEDULE "A"

# LEGAL DESCRIPTION

TOWN OF PORTOLA VALLEY

PARCEL I:

PORTION OF PARCEL "B", AS SHOWN ON THAT CERTAIN PARCEL MAP FILED AUGUST 2, 1971, IN VOLUME 13 OF PARCEL MAPS, AT PAGE 19, SAN MATEO COUNTY RECORDS, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST WESTERLY CORNER OF THE AFOREMENTIONED PARCEL B; THENCE FROM SAID POINT OF BEGINNING, ALONG THE NORTHERLY LINE OF PARCEL "B", NORTH 32° 39' 40" EAST, 169.18 FEET; NORTH 63° 28' 20" EAST, 422.00 FEET; AND NORTH 83° 40' 15" EAST, 98.68 FEET TO THE MOST WESTERLY CORNER OF PARCEL "C", AS SHOWN UPON SAID PARCEL MAP; THENCE ALONG THE WESTERLY LINE OF PARCEL "C", SOUTH 23° 50' 10" EAST, 209.71 FEET; THENCE LEAVING SAID LINE OF PARCEL "C", SOUTH 16° 16' 56" EAST, 323.30 FEET AND SOUTH 48° 04' 42" EAST, 337.97 FEET TO AN ANGLE POINT IN THE GENERALLY SOUTHERLY LINE OF THE AFOREMENTIONED PARCEL "B"; THENCE ALONG SAID GENERALLY SOUTHERLY LINE, SOUTH 73° 50' 55" WEST, 211.36 FEET; SOUTH 50° 33' 15" WEST, 249.89 FEET; NORTH 5° 25' 25" WEST, 270.58 FEET AND NORTH 59° 42' 03" WEST, 662.77 FEET TO THE POINT OF BEGINNING; AND BEING A PORTION OF PARCEL "A" OF MAP ENTITLED, "RESUBDIVISION OF PARCELS B & C OF PARCEL MAP RECORDED IN VOLUME 13 OF PARCEL MAPS, AT PAGE 19, WHICH MAP WAS FILED IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SAN MATEO, STATE OF CALIFORNIA, ON DECEMBER 10, 1974, IN BOOK 26 OF PARCEL MAPS, PAGE 46.

PARCEL II:

ALL THOSE CERTAIN RIGHTS AND EASEMENTS AS SET FORTH IN THE FOLLOWING DEEDS:

(A)   DEED FROM CORTE MADERA, A LIMITED PARTNERSHIP, TO THE HEIRS OR DEVISEES OF JOHN FRANCIS NAYLAN, DECEASED, RECORDED APRIL 9, 1968, IN BOOK 5456 OF OFFICIAL RECORDS, AT PAGE 529 (33374-AB), RECORDS OF SAN MATEO COUNTY, CALIFORNIA.

(B)   DEED FROM RANCHO CORTE MADERA, A LIMITED PARTNERSHIP, TO EDGAR B. FILION, ET UX, RECORDED SEPTEMBER 14, 1971, IN BOOK 6013 OF OFFICIAL RECORDS, AT PAGE 124 (FILE NO. 45427-AE), RECORDS OF SAN MATEO COUNTY, CALIFORNIA.

(C)   DEED FROM EDGAR B. FILION, ET UX, TO ROBERT GARY OWSLEY, RECORDED DECEMBER 9, 1974, IN BOOK 6748 OF OFFICIAL RECORDS, AT PAGE 545 (FILE NO. 6457-AI), RECORDS OF SAN MATEO COUNTY, CALIFORNIA.

ASSESSOR'S PARCEL NO. 076-350-220      JOINT PLANT NO. 076-035-350-19A

LEGALB 6/95 ksn



CHICAGO TITLE COMPANY

BUYER'S/BORROWER'S SETTLEMENT STATEMENT                    PAGE: 01

ESCROW NUMBER: 02970-000999799-001    ORDER NUMBER: 02970-000999799

CLOSING DATE:  03/03/04        CLOSER: Sharon LaFountain

BUYER:      Fletcher H. Hyler and Sheryl S. Root-Hyler

SELLER:

PROPERTY:    5070 Alpine Road, Portola Valley, California 94028

|  | CHARGE BUYER | CREDIT BUYER |
|---|---|---|
| Payoff Existing Loan With First Bank & Trust | | |
| Late Charge | 14,763.20 | |
| Statement Fee | 30.00 | |
| Foreclosure Fees | 10,478.63 | |
| 7 Monthly Payments to bring current | 258,356.21 | |
| March 1 Payment | 36,908.03 | |
| Payoff Existing Loan With Franchise Tax Board | 16,968.91 | |
| New Loan From Investment Grade Loans, Inc. | | 1,232,500.00 |
| Loan Charges To Investment Grade Loans, Inc. | | |
| Interest from 03/02/04 to 04/01/04 @ $    547.7800/day | 16,433.40 | |
| Loan Fee to Investment Grade Mortgage | 86,275.00 | |
| Loan Fee to The Bowers Group | 36,975.00 | |
| Document Preparation Fee to Investment Grade Mortgage | 3,000.00 | |
| Settlement or Closing Fee To Chicago Title Company | 750.00 | |
| Notary Fees To Notary Public | 30.00 | |
| Title Insurance To Chicago Title Company | 2,300.00 | |
| Delivery Fees to Outside Couriers | 25.00 | |
| Recording Fees | 70.00 | |
| APN: 076-350-220, 1st 1/2 2003/04 Taxes to San Mateo Count | 26,006.02 | |
| APN: 076-350-220, Tax Default to San Mateo County Tax Coll | 59,989.51 | |
| Payment of Tax Liens to Internal Revenue Service | 624,789.08 | |
| Hold for Recording of Releases to Come | 150.00 | |
| Funds Due To Buyer At Closing | 38,202.01 | |

```
                                         --------------   --------------

TOTALS                                $  1,232,500.00 $  1,232,500.00
                                         ==============   ==============
```

**EXHIBIT "C"**

FORM B10 (Official Form 10) (04/04)

| UNITED STATES BANKRUPTCY COURT **Northern** DISTRICT OF **California** | | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor | Case Number |
|---|---|
| Fletcher Hartwell Hyler | 04-32952 |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

**FILED**
FEB 17 2005
UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

Name of Creditor (The person or other entity to whom the debtor owes money or property):

[see attached list]

Name and address where notices should be sent:
Michael E. Stone
LAW OFFICES OF MICHAEL E. STONE
3425 S. Bascom Ave., Ste I
Campbell, CA 95008
Telephone number: 408-377-9899

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.
☐ Check box if you have never received any notices from the bankruptcy court in this case.
☐ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

Account or other number by which creditor identifies debtor:

"loan# 0402022"

Check here ☐ replaces
if this claim ☐ amends    a previously filed claim, dated:_____

**1. Basis for Claim**
☐ Goods sold
☒ Services performed
XX Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☐ Other

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (fill out below)
Last four digits of SS #: _____
Unpaid compensation for services performed
from _____ to _____
(date)                     (date)

**2. Date debt was incurred:**
March 3, 2004

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:** $ _____ **$1,409,638** _____ **$1,409,638**
(unsecured)          (secured)          (priority)          (Total)

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.
☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☒ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
XX Real Estate   ☐ Motor Vehicle
☐ Other_____

Value of Collateral: $ 8 million

Amount of arrearage and other charges at time case filed included in secured claim, if any: $ 117,837

**6. Unsecured Nonpriority Claim** $ _____

☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim

Amount entitled to priority $ _____
Specify the priority of the claim:
☐ Wages, salaries, or commissions (up to $4,925),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units-11 U.S.C. § 507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).
*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**9. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**10. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim

THIS SPACE IS FOR COURT USE ONLY

| Date | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): |
|---|---|
| 02/15/05 | Michael E. Stone, Attorney for Secured Creditors |

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

EXHIBIT "D"

Second Deed of Trust Secured Creditors

Lincoln Trust Company, Custodian FBO Doug Pickering IRA, Chern S. Lin and Felicia Lin,

Janice Tempey and Ray S. Wolf, Thomas C. O'Connell Jr. and Janice K. O'Grady, Pensco Trust

Company, Custodian FBO John A. Snyder IRA, Pensco Trust Company, Custodian FBO Phil

Ahlfeldt, IRA; and John Stevens.

FROM : IGL Inc.                FAX NO. :650-949-1334                    30 2004 12:50PM  P8

RECORDING REQUESTED BY
*Chicago Title 91 999 767 512*
WHEN RECORDED MAIL TO


INVESTMENT GRADE LOANS, INC.
289 S. SAN ANTONIO ROAD #202
LOS ALTOS, CA 94022



**2004-038332**

CHICAGO TITLE INSURANCE COMPANY
08:00am 03/03/04 DT Fee: 40.00
Count of pages 12
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

*2 0 0 4 0 0 3 8 3 3 2 A R*

RECORDER: INDEX FOR SPECIAL NOTICE

# DEED OF TRUST

Loan No. 0402022

   This Deed of Trust ("Security Instrument"), made this date February 19, 2004. Trustor is Fletcher H. Hyler and Sheryl S. Root-Hyler, husband and wife, as community property ("Borrower"). The Trustee Investment Grade Loans, ("Trustee"). The Beneficiary, See Exhibit "B", whose address is 289 S. SAN ANTONIO ROAD #202, LOS ALTOS, CA 94022 ("Lender").

   **BORROWER,** owes Lender the principle sum of (U.S. $1,232,500.00).

   This debt is evidenced by Borrower's note dated the same as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on April 1, 2009. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in San Mateo County, California: which has the address of: 5070 Alpine Road, Portola Valley, CA 94028 ("Property Address"); Legal Description: See Exhibit A ; APN #: 076-350-220

   **TOGETHER WITH** all the improvements now or hereafter erected on the property, and all easements, appurtenances, and all fixtures now or hereafter to the property. All replacements and additions shall be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property";

   **BORROWER COVENANTS** that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property, that the Property is unencumbered except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

## BORROWER AND LENDER COVENANT AND AGREE AS FOLLOWS:

   **1. Payments of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due, the principal of and interest on the debt evidenced by the Note, prepayment and late charges as provided in the Note.

   **2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by the Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments of ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items". Lender may, at any time, collect and hold Funds in any amount not to exceed the maximum amount a lender for a federally related loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. -2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time , collect and hold Funds due on the basis of current data and reasonable estimates of future Escrow Items or otherwise in accordance with applicable law.

   The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be require to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Fund was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

   If the Funds held by Lender exceed the amount permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

# NOTE SECURED BY A DEED OF TRUST

Loan No : 0402022                                    Date : February 19, 2004,        LOS ALTOS, California

5070 Alpine Road, Portola Valley, CA 94028 - Property Address

**1.  BORROWER'S PROMISE TO PAY**

In Return for a loan that I have received, I promise to pay U.S. One million Two hundred Thirty-Two thousand Five hundred exactly ($1,232,500.00) (this amount will be called "principal"), plus interest, to the order of See Exhibit "B", (who will be called "Lender"). I understand that the Lender may transfer this Note. The Lender or anyone else who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder(s)."

**2.  INTEREST**

I will pay interest at a yearly rate as described in Section 3 below.
Interest will be charged on unpaid principal until the full amount of principal has been paid.
I also agree to pay interest at the rate described in Section 3 below on the prepaid finance charges which are a part of the principal.

**3.  PAYMENTS**

My payments are XX Interest Only  Fully Amortized  Other
I will make payments each month as follows:

| Number of Payments | Payment Start Date | Interest Rates | Payment Amounts |
|---|---|---|---|
| 60 | April 1, 2004 | 16.000% | $16,433.33 |
| 1 | April 1, 2009 | 16.000 % | $1,248,933.33 |
|  |  | % | $ |
|  |  | % | $ |
|  |  | % | $ |
|  |  | % | $ |

I will make these payments until I have paid all of the principal and interest and any other charges that I may owe under this Note. If on April 1, 2009 (the Due Date) I still owe amounts under this Note (balloon balance), I will pay all those amounts, in full, on that date.

I will make my payments payable to INVESTMENT GRADE LOANS, INC. 289 S. SAN ANTONIO ROAD #202 LOS ALTOS CA 94022 or at a different place if I am notified by the Note Holder or the Agent for the Note Holder.

**4.  BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charge of Overdue Payments  If I do not pay the full amount of each monthly payment by the end of 10 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 10.00% of my overdue payment or U.S. $5.00, which ever is more. I will pay this late charge only once on any late payment.

In the event a balloon payment is delinquent more than 10 days after the date it is due, I agree to pay a late charge in an amount equal to the maximum late charge that could have been assessed with respect to the largest single monthly installment previously due, other than the balloon payment, multiplied by the sum of one plus the number of months occurring since the late payment charge began to accrue.

(B) Default

If I do not pay the full amount of each monthly payment due under this Note by the date stated in Section 3 above, I will be in default, and the Note Holder may demand that I pay immediately all amounts that I owe under this Note.

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time. In the event I am in default I agree to pay interest at the rate of three (3%) percent in excess of the interest rate set forth in Section 3. A default of any obligation of Borrower to Lender shall constitute a default in all obligations of Borrower to Lender.

(C) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees. A default upon any interest of any Note Holder shall be a default upon all interests.

**5.  BORROWER'S PAYMENTS BEFORE THEY ARE DUE - PREPAYMENT PENALTIES**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as "prepayment." If I pay all the loan principal before it is due, whether such payment is made voluntarily or involuntarily, I agree to pay a prepayment penalty computed as follows: Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

Some of those conditions are described as follows: There is no Prepayment Penalty. Loan can be partially or fully repaid at any time.

**6.  BORROWER'S WAIVERS**

I waive my rights to require the Note Holder to do certain things. Those things are: (a) to demand payment of amounts due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); (c) to obtain an official certification of nonpayment (known as "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else, also waives these rights. These persons are known as "guarantors, sureties and endorsers."



# MICHAEL E. STONE
### ATTORNEY AT LAW

September 20, 2006

Terrance Stinnett, Esq.
LAW OFFICES OF GOLDBERG, STINNETT, MEYERS & DAVIS
44 Montgomery St., Ste. 2900
San Francisco, CA 94104

 **Re:**     **In re: Fletcher H. Hyler**

Dear Mr. Stinnett:

In response to your letter of September 15, 2006, please be advised that Mr. Hyler made only one pre-petition payment on the $1,235,500, loan and that was a partial payment of $8,966.66 on May 24, 2004. The only other payments received were the three interest only payments made through the bankruptcy, on April 21, 2005, on May 24, 2005, and on September 12, 2005, in the amount of $16,433.33 each.

There are six pre-petition late charges due, of $1,643.33 each, for a total of $9,859.98.

The accrued and unpaid interest (at the note rate, not even adding "default interest) totals $411,726.59 to August 1, 2006 (and the per diem is $547.78). In addition to that, there are foreclosure fees and costs incurred in the sum of $15,575.84.

Adding to that the unpaid principal of the loan, and not yet considering attorney's fees incurred to date, and the balance due is $1,669,362.41.

Hoping this sufficiently responds to your inquiry, and reminding you that Mr. Hyler applied for a business loan and it was treated as one (such that the referenced provisions of the Truth and Lending Act are inapplicable), I remain

Very Truly Yours,

LAW OFFICE OF MICHAEL E. STONE

Michael E. Stone

MES/td

cc: client

EXHIBIT "E"

LAW OFFICES
### GOLDBERG, STINNETT, MEYERS & DAVIS
A PROFESSIONAL CORPORATION
44 MONTGOMERY STREET, SUITE 2900
SAN FRANCISCO, CALIFORNIA 94104

LAWRENCE GOLDBERG
TERRANCE L. STINNETT
MERLE C. MEYERS
DENNIS D. DAVIS
DANIEL M. LINCHEY
KATHERINE D. RAY
MIRIAM KHATIBLOU
KATHY L. QUON
YOSHIE VALADEZ
ANN E. SOTER

TELEPHONE
(415) 362-5045

FACSIMILE
(415) 362-2392

tstinnett@gsmdlaw.com

September 22, 2006

Michael E. Stone, Esq.
Law Offices of Michael E. Stone
3425 S. Bascom Ave., Suite I
Campbell, CA 95008

Investment Grade Loans, Inc.
289 S. San Antonio Road #202
Los Altos, CA 94022

Re:  Fletcher Hartwell Hyler, Debtor, Case No. 04-32952-TEC
     Loan No. 0402022

Gentlemen:

As you know, our office represents Andrea A. Wirum, trustee of the Chapter 11 estate of Fletcher Hartwell Hyler in Mr. Hyler's Chapter 11 case now pending in the United States Bankruptcy Court for the Northern District of California, San Francisco Division. This letter is being sent to Mr. Stone as the attorney for (1) Lincoln Trust Company, Custodian FBO Doug Pickering, IRA, (2) Chern S. Lin and Felicia Lin, (3) Janice Tempey and Roy S. Wolf, husband and wife, (4) Thomas C. O'Connell, Jr. and Janice K. O'Grady, husband and wife, (5) Pensco Trust Company, Custodian FBO John A Snyder IRA, (6) Pensco Trust Company, Custodian FBO Phil Ahlfeldt, IRA, and (7) John Stevens (hereinafter collectively referred to as the "Lenders") and (8) Investment Grade Loans, Inc. ("IGL"). This letter is being sent directly to IGL pursuant to the instructions contained in the Notice To Customers Required By Federal Law Notice Of Right To Cancel – General that was provided to Mr. Hyler in connection with the above-reference loan.

On or about March 3, 2004, prior to the date that Mr. Hyler filed his petition for relief under the provisions of Chapter 11 of the United States Bankruptcy Code, Mr. Hyler and his wife, Sheryl S. Root-Hyler, obtained a loan from the Lenders the sum of $1,232,500.00, which loan is evidenced by a Note Secured By A Deed Of Trust dated February 19, 2004 (the "Note"), a copy of which is attached hereto as Exhibit "A". The obligation owed by Mr. Hyler to the Lenders pursuant to the Note is secured by the lien of a Deed of Trust against the residence of the debtor and his wife commonly known as 5070 Alpine Road, Portola Valley, California, which deed of trust was recorded on March 3, 2004. A copy of said Deed of Trust is attached hereto as Exhibit "B". The loan was arranged by IGL, which acted as a mortgage broker on behalf of the Lenders with regard to the transaction.

**EXHIBIT "F"**

107016.doc

Michael E. Stone, Esq.
Investment Grade Loans, Inc.
September 22, 2006
Page 2

It is the position of the trustee that the loan transaction between Mr. Hyler, his wife and the Lenders was, and is, subject to the provisions of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.* and the Federal Reserve Board's Regulation Z, 12 C.F.R. Pt. 226 *et seq.* While the trustee acknowledges that you have taken the position that the loan was obtained for a business purpose, and therefore, not subject to TILA, it is the trustee's position that the loan was made primarily for personal purposes and thus subject to TILA. and Regulation Z.

Our analysis of the provisions of the Note indicates that the loan transaction violates the provisions of TILA in the following respects:

1.     The annual percentage rate on the loan of 16.0% exceeds the maximum permitted by Section 1602(aa)(A) of TILA.

2.     The total points and fees of approximately $126,250.00 paid by Mr. Hyler and his wife exceeded 8.0% of the total amount of the loan in violation of Section 1602(aa)(B) of TILA.

3.     The Note provides that in the event of a default the interest rate increases by 3.0% over the non-default rate of 16.0%, i.e., to 19.0%, in violation of Section 1639(d) of TILA.

The foregoing listing of violations is not intended to be an exclusive listing, as discovery may reveal additional violations.

Under the provisions of Section 1635(a) of TILA and 12 C.F.R. § 226.23, as a result of the foregoing violations of TILA, the trustee is entitled to rescind the loan transaction, and the trustee does hereby exercise her right to rescind the loan transaction.

Very truly yours,

GOLDBERG, STINNETT, MEYERS & DAVIS
A Professional Corporation

By

Terrance L. Stinnett

TLS:tls
Enclosures
cc:     Fletcher Hartwell Hyler, (w/encl.)
        Andrea A. Wirum, Esq., (w/encl.)
        Jenifer K. Gardella, Esq., (w/encl.)
10185

107016.doc

# NOTE SECURED BY A DEED OF TRUST

Loan No : <u>0402022</u>                                    Date : <u>February 19, 2004,</u>        LOS ALTOS, Californi

<u>5070 Alpine Road, Portola Valley, CA 94028</u> - Property Address

**1.   BORROWER'S PROMISE TO PAY**
   In Return for a loan that I have received, I promise to pay U.S. <u>One million Two hundred Thirty-Two thousand Five hundred exactl</u>
<u>($1,232,500.00)</u> (this amount will be called "principal"), plus interest, to the order of See Exhibit "B", (who will be called "Lender").
understand that the Lender may transfer this Note.  The Lender or anyone else who takes this Note by transfer and who is entitled t
receive payments under this Note will be called the "Note Holder(s)."

**2.   INTEREST**
   I will pay interest at a yearly rate as described in Section 3 below.
   Interest will be charged on unpaid principal until the full amount of principal has been paid.
   I also agree to pay interest at the rate described in Section 3 below on the prepaid finance charges which are a part of the  principal.

**3.   PAYMENTS**
   My payments are XX Interest Only  Fully Amortized   Other
   I will make payments each month as follows:

*CERTIFIED TO BE A TRUE AND CORRECT COPY CHICAGO TITLE INSURANCE CO.*

| Number of Payments | Payment Start Date | Interest Rates | Payment Amounts |
|---|---|---|---|
| 60 | April 1, 2004 | 16.000% | $16,433.33 |
| 1 | April 1, 2009 | 16.000  % | $1,248,933.33 |
|  |  | % | $ |
|  |  | % | $ |
|  |  | % | $ |
|  |  | % | $ |

   I will make these payments until I have paid all of the principal and interest and any other charges that I may owe under  this Note.  I
on <u>April  1, 2009</u> (the Due Date) I still owe amounts under this Note (balloon balance), I will pay all those amounts, in full, on that date.
   I will make my payments payable to INVESTMENT GRADE LOANS, INC. <u>289 S. SAN ANTONIO ROAD #202 LOS ALTO</u>
<u>CA 94022</u> or at a different place if I am notified by the Note Holder or the Agent for the Note Holder.

**4.   BORROWER'S FAILURE TO PAY AS REQUIRED**
   **(A) Late Charge of Overdue Payments**  If I do not pay the full amount of each monthly payment by the end of <u>10</u> calendar day
after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be  <u>10.00%</u> of my overdue payment o
U.S. $5.00, which ever is more.  I will pay this late charge only once on any late payment.
   In the event a balloon payment is delinquent more than 10 days after the date it is due, I agree to pay a late charge in an amount equa
to the maximum late charge that could have been assessed with respect to the largest single monthly installment previously due, othe
than the balloon payment, multiplied by the sum of one plus the number of months occurring since the late payment charge began t
accrue.
   **(B) Default**

   If I do not pay the full amount of each monthly payment due under this Note by the date stated in Section 3 above, I will be i
default, and the Note Holder may demand that I pay immediately all amounts that I owe under this Note.

   Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Not
Holder will still have the right to do so if I am in default at a later time.  In the event I am in default I agree to pay interest at the rat
of three (3%) percent in excess of the interest rate set forth in Section 3.  A default of any obligation of Borrower to Lender sha
constitute a default in all obligations of Borrower to Lender.

   **(C) Payment of Note Holder's Costs and Expenses**
   If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid bac
for all its costs and expenses to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorney
fees.  A default upon any interest of any Note Holder shall be a default upon all interests.

**5.   BORROWER'S PAYMENTS BEFORE THEY ARE DUE - PREPAYMENT PENALTIES**
   I have the right to make payments of principal at any time before they are due.  A payment of principal only is known a
"prepayment."  If I pay all the loan principal before it is due, whether such payment is made voluntarily or involuntarily, I agree to pay
prepayment penalty computed as follows:  Security Instrument describes how and under what conditions I may be required to mak
immediate payment in full of all amounts that I owe under this Note.

   Some of those conditions are described as follows: There is no Prepayment Penalty.  Loan can be partially or fully repaid at any time

**6.   BORROWER'S WAIVERS**
   I waive my rights to require the Note Holder to do certain things.  Those things are: (a) to demand payment of amounts due (know
as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); (c) to obtain an offici
certification of nonpayment (known as "protest").  Anyone else who agrees to keep the promises made in this Note, or who agrees t
make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else, als
waives these rights.  These persons are known as "guarantors, sureties and endorsers."

**EXHIBIT "A"**

7. **RESPONSIBILITY OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each of us is fully and personally obligated to keep all of the promises made in this including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to d these thing. Any person who takes over these obligations, including the obligations of the guarantor, surety, or endorser of this Note, i also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each perso individually or against all of us together. This means that anyone of us may be required to pay all of the amounts owed under this Note.

8. **THIS NOTE IS SECURED BY A DEED OF TRUST**

In addition to the protection given to the Note Holder under this Note, a Deed of Trust (the "Security Instrument") with a Due-on Transfer Clause dated the same date of this Note, protects the Note Holder from possible losses which might result if I do not keep th promises which I make in the Note. That Security Instrument describes how and under what conditions I may be required to mak immediate payment in full of all amounts that I owe under this Note.

Some of those conditions are described as follows:

"Lender's Right to Require The Loan to be Paid Off Immediately. If the borrower shall sell, enter into a contract of sale, lease for term of more than 6-years (including options to renew), lease with an option to purchase for any term, or transfer all or part of th Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) or a transfer b devise, descent, or by operation of law upon the death of a joint tenant, the Lender may, at its option declare the Note and any othe obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable, in full. No waiver of th Lender's right to accelerate shall be effective unless it is in writing."

_Fletcher H. Hyler_                                                      2/2/04
Fletcher H. Hyler - Borrower                                                    Dat

_Sheryl S. Root-Hyler by F.H. Hyler attorney in Fact_                      2/20/04
Sheryl S. Root-Hyler - Borrower                                                Dat

- Borrower                                            Dat

- Borrower                                            Dat

## SPECIAL NOTICE TO ASSIGNEES REGARDING THIS MORTGAGE

Notice: This is a mortgage subject to special rules under the federal Truth in Lending Act. Purchasers or assignees of this mortgage could be liable for all claims and defenses with respect to the mortgage that the borrower could assert against the creditor

# ASSIGNMENT OF NOTE
# SECURED BY A DEED OF TRUST

Date:

FOR      VALUE      RECEIVED,      the      undersigned      hereby      grants,      assigns      and      transfers      to
, all beneficial interest under the within Note, without recourse, and Deed of Trust securing same.

**DO NOT DESTROY THIS NOTE:** When paid it must be surrendered to the Trustee, together with the Deed of Trust securing same fo cancellation, before reconveyance will be made.

S32-NOTE.DOC

# EXHIBIT "B"

TO NOTE SECURED BY A DEED OF TRUST DATED FEBRUARY 19, 2004 TO
FLETCHER H. HYLER AND SHERYL S. ROOT-HYLER
IN THE AMOUNT OF $1,232,500.00 IN FAVOR OF THE FOLLOWING
BENEFICIARIES:

Lincoln Trust Company, Custodian FBO Doug Pickering, IRA as to an undivided 740/12325
interest,

Chern S. Lin and Felicia Lin, husband and wife as community property as to an undivided
3000/12325 interest,

Janice Tempey and Roy S. Wolf, husband and wife as community property as to an
undivided 2600/12325 interest,

Thomas C. O'Connell, Jr. and Janice K. O'Grady, husband and wife as community property
as to an undivided 1235/12325 interest,

Pensco Trust Company, Custodian FBO John A. Snyder IRA, as to an undivided 750/12325
Interest,

Pensco Trust Company, Custodian FBO Phil Ahlfeldt, IRA, as to an undivided 3000/12325
interest

John Stevens, an unmarried man as to an undivided 1000/12325 interest.

RECORDING REQUESTED BY: 03180-WHA

~~Chicago Title~~ 03180-WHA

WHEN RECORDED MAIL TO

INVESTMENT GRADE LOANS, INC.
289 S. SAN ANTONIO ROAD #202
LOS ALTOS, CA 94022

**2004-138332**

CHICAGO TITLE INSURANCE COMPANY
08:00am 03/03/04 DT Fee: 40.00
Count of pages 12
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

```
*  2 0 0 4 0 0 3 8 3 3 2 A R  *
```

RECORDER: INDEX FOR SPECIAL NOTICE

# DEED OF TRUST

12p.

Loan No. 0402022

This Deed of Trust ("Security Instrument"), made this date February 19, 2004. Trustor is Fletcher H. Hyler and Sheryl S. Root-Hyler, husband and wife, as community property ("Borrower"). The Trustee Investment Grade Loans, ("Trustee"). The Beneficiary, See Exhibit "B", whose address is 289 S. SAN ANTONIO ROAD #202, LOS ALTOS, CA 94022 ("Lender").

**BORROWER**, owes Lender the principle sum of (U.S. $1,232,500.00).

This debt is evidenced by Borrower's note dated the same as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on April 1, 2009. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in San Mateo County, California: which has the address of : 5070 Alpine Road, Portola Valley, CA 94028 ("Property Address"); Legal Description: See Exhibit A ; APN #: 076-350-220

**TOGETHER WITH** all the improvements now or hereafter erected on the property, and all easements, appurtenances, and all fixtures now or hereafter to the property. All replacements and additions shall be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property";

**BORROWER COVENANTS** that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property, that the Property is unencumbered except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

## BORROWER AND LENDER COVENANT AND AGREE AS FOLLOWS:

**1. Payments of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due, the principal of and interest on the debt evidenced by the Note, prepayment and late charges as provided in the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by the Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments of ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items". Lender may, at any time, collect and hold Funds in any amount not to exceed the maximum amount a lender for a federally related loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. -2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time , collect and hold Funds due on the basis of current data and reasonable estimates of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be require to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Fund was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amount permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

# EXHIBIT "B"

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. this insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by; Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewal shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or material impairment of the lien created by this Security Instrument or false inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value or the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instruments, appearing in court, paying reasonable attorney's fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept,

use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taken of any part or the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount to the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which set maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notice.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred ( or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for

reinstatement) Case 3:07-cv-03919-WHA to power of sale contained in Filed 04/08/2008 Page 28 of 32 a judgment enforcing this Security Instrument. The conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonable require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity ( known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of and Hazardous substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property on small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**BORROWER AND LENDER FURTHER COVENANT AND AGREE AS FOLLOWS:**

**21. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default to any other defense of borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sole. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by applicable law to Borrower and to the other person prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser a Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**22. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or Persons shall pay any recordation costs.

**23. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereinabove by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

24. Request for Notices. Borrower requests that copies of the notices of default and sale be sent to Borrower's address which is the Property Address.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by law for furnishing the statement of obligation as provided by section 2943 of the Civil Code of California.

26. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

XX  1-4 Family Rider      ___ Condominium Rider      ____ Planned Unit Development Rider
XX  Security Rider        Other(s) specify:

# REQUEST FOR SPECIAL NOTICE OF DEFAULT AND FORECLOSURE UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed or trust or other encumbrance with a lien which has priority over this Security Instrument to Notice Lender care of Lender's Servicing Agent, at its address set forth on page one of this Security Instrument, of any default under the superior encumbrance and of any sale or other foreclosure action.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants by contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_Fletcher H. Hyler_ _____          2/20/04
Fletcher H. Hyler - Borrower                                   Dated

_Sheryl S. Root-Hyler by F.H.Hyler attorney in fact_          2/20/04
Sheryl S. Root-Hyler - Co-Borrower                            Dated

STATE OF CALIFORNIA <u>San Mateo</u> County ss.
On _____ before me, the undersigned, a Notary Public in and for said State, personally appeared _Fletcher H. Hyler_ personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledge to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted. executed the instrument. WITNESS my hand and official seal.

_____                             Dated ____
Notary's Signature

Name (typed or printed) _Sharon E. La Fountain_

My Commission Expires _03/31/07_

SHARON E. LA FOUNTAIN
Commission # 1403418
Notary Public - California
Santa Clara County
My Comm. Expires Mar 31, 2007

(This area for official notarial seal)

# REQUEST FOR FULL RECONVEYANCE

TO TRUSTEE:

The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all other indebtedness secured by this Security Instrument, have been paid in full. You are hereby directed to cancel said note or notes and this Security Instrument, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Security Instrument to the person or persons legally entitled thereto.

Dated:

("Lender")

When recorded, mail to INVESTMENT GRADE LOANS, INC., 289 S. SAN ANTONIO ROAD #202, LOS ALTOS, CA 94022

Att: <u>Recon department</u>

K_DEED.DOC

# ILLEGIBLE NOTARY SEAL DECLARATION

# (GOVERNMENT CODE 27361.7)

I declare under the penalty of perjury that the notary seal on the
document to which this statement is attached, reads as follows:

NAME OF NOTARY PUBLIC: Sharon E. La Fountain

COMMISION NUMBER: 1403418

NOTARY PUBLIC STATE: California

COUNTY: Santa Clara

MY COMM. EXPIRES: 3-31-07

SIGNATURE OF DECLARANT: _____

PRINT NAME OF DECLARANT: Amy Anderson

CITY & STATE OF DECLARATION: Walnut Creek, California

DATE SIGNED: 3-1-04

THE ABOVE INFORMATION MUST BE LEGIBLE FOR SCANNING

Order No. 238092 - TO1

**LEGAL DESCRIPTION**
**EXHIBIT / SCHEDULE "A"**

# LEGAL DESCRIPTION

TOWN OF PORTOLA VALLEY

PARCEL I:

PORTION OF PARCEL "B", AS SHOWN ON THAT CERTAIN PARCEL MAP FILED AUGUST 2, 1971, IN VOLUME 13 OF PARCEL MAPS, AT PAGE 19, SAN MATEO COUNTY RECORDS, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST WESTERLY CORNER OF THE AFOREMENTIONED PARCEL B; THENCE FROM SAID POINT OF BEGINNING, ALONG THE NORTHERLY LINE OF PARCEL "B", NORTH 32° 39' 40" EAST, 169.18 FEET; NORTH 63° 28' 20" EAST, 422.00 FEET; AND NORTH 83° 40' 15" EAST, 98.68 FEET TO THE MOST WESTERLY CORNER OF PARCEL "C", AS SHOWN UPON SAID PARCEL MAP; THENCE ALONG THE WESTERLY LINE OF PARCEL "C", SOUTH 23° 50' 10" EAST, 209.71 FEET; THENCE LEAVING SAID LINE OF PARCEL "C", SOUTH 16° 16' 56" EAST, 323.30 FEET AND SOUTH 48° 04' 42" EAST, 337.97 FEET TO AN ANGLE POINT IN THE GENERALLY SOUTHERLY LINE OF THE AFOREMENTIONED PARCEL "B"; THENCE ALONG SAID GENERALLY SOUTHERLY LINE, SOUTH 73° 50' 55" WEST, 211.36 FEET; SOUTH 50° 33' 15" WEST, 249.89 FEET; NORTH 5° 25' 25" WEST, 270.58 FEET AND NORTH 59° 42' 03" WEST, 662.77 FEET TO THE POINT OF BEGINNING; AND BEING A PORTION OF PARCEL "A" OF MAP ENTITLED, "RESUBDIVISION OF PARCELS B & C OF PARCEL MAP RECORDED IN VOLUME 13 OF PARCEL MAPS, AT PAGE 19, WHICH MAP WAS FILED IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SAN MATEO, STATE OF CALIFORNIA, ON DECEMBER 10, 1974, IN BOOK 26 OF PARCEL MAPS, PAGE 46.

PARCEL II:

ALL THOSE CERTAIN RIGHTS AND EASEMENTS AS SET FORTH IN THE FOLLOWING DEEDS:

(A)   DEED FROM CORTE MADERA, A LIMITED PARTNERSHIP, TO THE HEIRS OR DEVISEES OF JOHN FRANCIS NAYLAN, DECEASED, RECORDED APRIL 9, 1968, IN BOOK 5456 OF OFFICIAL RECORDS, AT PAGE 529 (33374-AB), RECORDS OF SAN MATEO COUNTY, CALIFORNIA.

(B)   DEED FROM RANCHO CORTE MADERA, A LIMITED PARTNERSHIP, TO EDGAR B. FILION, ET UX, RECORDED SEPTEMBER 14, 1971, IN BOOK 6013 OF OFFICIAL RECORDS, AT PAGE 124 (FILE NO. 45427-AE), RECORDS OF SAN MATEO COUNTY, CALIFORNIA.

(C)   DEED FROM EDGAR B. FILION, ET UX, TO ROBERT GARY OWSLEY, RECORDED DECEMBER 9, 1974, IN BOOK 6748 OF OFFICIAL RECORDS, AT PAGE 545 (FILE NO. 6457-AI), RECORDS OF SAN MATEO COUNTY, CALIFORNIA.

ASSESSOR'S PARCEL NO. 076-350-220        JOINT PLANT NO. 076-035-350-19A