GOLDBERG, STINNETT, MEYERS & DAVIS
A Professional Corporation
TERRANCE L. STINNETT, ESQ. CA Bar #46010
DANIEL M. LINCHEY, ESQ. CA Bar #111739
YOSHIE VALADEZ, ESQ. CA Bar #212994
44 Montgomery Street, Suite 2900
San Francisco, CA  94104
Telephone: (415) 362-5045
Facsimile:  (415) 362-2392

Attorneys for Andrea A. Wirum, Trustee

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>FLETCHER HARTWELL HYLER, aka BUD H. HYLER,<br><br>Debtor. | Case No. 04-32952-TEC<br><br>Under Chapter 11<br><br>Date:   May 19, 2006<br>Time:   9:30 A.M.<br>Place:  235 Pine Street, 23rd Floor<br>        San Francisco, CA<br>Judge:  Honorable Thomas E. Carlson |

## **TRUSTEE'S STATUS CONFERENCE STATEMENT**

### **I.   INTRODUCTION**

Andrea A. Wirum, trustee ("Trustee") of the chapter 11 estate (the "Estate") of Fletcher Hartwell Hyler, aka Bud H. Hyler ("Debtor"), hereby submits her status conference statement in order to set forth Trustee's position with regard to the issue of whether or not the loan secured by the second deed of trust against the debtor's residence violates the provision of the Truth In Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*  As set forth below, it is Trustee's position that the loan in question does violate the TILA.

### **II.   FACTS**

1.   On or about February 19, 2004 Fletcher H. Hyler, the debtor herein, and Sheryl S. Root-Hyler, borrowed the sum of $1,232,500.00 from the following lenders, to wit:  (1) Lincoln Trust

Company, Custodian FBO Doug Pickering, IRA as to an undivided 740/12325 interest, (2) Chern S. Lin and Felicia Lin, husband and wife as community property as to an undivided 3000/12325 interest, (3) Janice Tempey and Roy s. Wolf, husband and wife as community property as to an undivided 26,00/12325 interest, (4) Thomas C. O'Connell, Jr. and Janice K. O'Grady, husband and wife as community property as to an undivided 1235/12325 interest, (5) Pensco Trust Company, Custodian FBO John A Snyder IRA, as to an undivided 750.12325 interest, (6) Pensco Trust Company, Custodian FBO Phil Ahlfeldt, IRA, as to an undivided 3000/12325 interest and (7) John Stevens, an unmarried man as to an undivided 1000/12325 interest (hereinafter collectively referred to as the "Lenders").

2. The loan is evidenced by a Note Secured By A Deed Of Trust (the "Note"), a copy of which is attached hereto as **Exhibit "A"** and incorporated herein by this reference. The Note is secured by the lien of a second deed of trust against the residence of the debtor and his wife.

3. The loan was arranged by Investment Grade Loans ("IGL"), a mortgage broker.

4. Section 3 of the Note provides for an interest rate of 16.0%, payable interest only for a period of five (5) years, with a balloon payment due on April 1, 2009. Section 4 (A) of the Note provides for a late charge of 10% of the amount of any overdue payment, and Section 4 (B) of the Note provides that in the event of a default the applicable interest rate shall be "three (3%) in excess of the interest rate set forth in Section 3."

5. Trustee is informed that the major non-closing costs proceeds from the loan were used as follows: (1) approximately $280,000.00 to cure defaults under the loan secured by the first deed of trust against the residence, (2) approximately $560,000.00 was paid the IRS, of which approximately $310,368.59 was due by the debtor for employment taxes owed with regard to a business formerly operated by the debtor, and approximately $310,368.59 was due by the debtor for personal income taxes, and (3) approximately $252,813.90 was used to pay property taxes and the balance went toward personal house fix-up and other personal expenses.

### III. DISCUSSION

The TILA is to be enforced strictly against creditors and construed liberally in favor of consumers. *Farley v. Turan-Foley Imports, Inc.* 65 F3d 475 (5th Cir. 1995). It is a remedial statute

2

that is to be liberally construed in favor of the consumer. *In re Casselli,* 4 B.R. 531 (Bkrtcy.C.D.Cal. 1980).

Section 1602(f) of the TILA defines the term "creditor", insofar as relevant to the loan in question, as follows: "Any person who originated 2 or more mortgages referred to in subsection (aa) of this section in any 12-month period ***or any person who originates 1 or more such mortgages through a mortgage broker shall be considered to be a creditor for purposes of this subchapter.***" 15 U.S.C. §1602(f)[1] (Emphasis added). In the instant case, the Lenders arranged the loan in question through a mortgage broker, and are thus considered to be "creditors" for purposes of the TILA.

"Person" is defined in Section 1602(d) as "a natural person or an organization." Section 1602(c) defines "organization" as being "a corporation, government or governmental subdivision or agency, trust, estate, partnership, cooperative, or association."

Section 1602(aa) provides as follows:

> A mortgage referred to in this subsection means a consumer credit transaction that is secured by the consumer's principal dwelling, other than a residential mortgage transaction, a reverse mortgage transaction, or a transaction under an open end credit plan, if –
>
> (**A**) the annual percentage rate at consummation of the transaction will exceed by more than 10 percentage points the yield on Treasury securities having comparable periods of maturity on the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor; or
>
> (**B**) the total points and fees payable by the consumer at or before closing will exceed the greater of –
>
> (**i**) 8 percent of the total loan amount; or
>
> (**ii**) $400.

Trustee does not know exactly when the loan application was received by the Lenders or IGL. However, since the loan was made in February of 2004, it seems reasonable to assume that the application was received in either December of 2003 or January of 2004. As set forth in **Exhibit "B"** attached hereto, on December 15, 2003 the rate for 5 year Treasury securities was 3.26% and on January 15, 2004 the rate for 5 year Treasury securities was 2.97%. Thus, pursuant to the provisions

---

[1] All references to a section are to the TILA, 15 U.S.C. § 1601 *et seq* unless otherwise stated.

3

TRUSTEE'S STATUS CONFERENCE STATEMENT

10185 103471.DOC

of Section 1602(aa) (A) the annual percentage rate on the loan in question could not exceed 13.36% or 12.97%, depending upon when the application for the loan was received, in order for the loan to be exempt from the TILA.

Furthermore, it appears that the total points and fees paid by the debtor amounted to approximately $126,250.00, which was approximately 11.0% of the total amount of the loan. Therefore, the total amount of points and fees exceed the 8% permitted by the provisions of Section 1602(aa) (B).

Section 1603(1) of the TILA does provide that "[t]his subchapter does not apply to the following: (1) Credit transactions involving extensions of credit primarily for business, commercial, or agricultural purposes, or to government or governmental agencies or instrumentalities, or to organizations." However, it is Trustee's position, based upon the information provided by the debtor as to the use of the loan proceeds, that the loan was NOT obtained primarily for business, commercial, or agricultural purposes. The only possible aspect of the loan that even arguably could be considered to be for business purposes was that portion of the proceeds (i.e., $310,368.59) that was used to pay employment taxes personally owed by the debtor as a result of business formerly operated by him, but which was no longer operated by him at the time of the consummation of the loan. The amount of the loan proceeds used to pay the debtor's employment tax obligation amounted to only approximately 26% of the total loan proceeds. However, it is Trustee's position that even that portion of the loan proceeds must be considered as being for personal use since the debtor was personally obligated for the taxes in question, and he was no longer operating the business that resulted in the tax obligation. However, even if the amount used to pay the debtor's employment tax obligation were to be considered a business purpose, since approximately 74% of the loan proceeds were clearly used for personal obligations, it is Trustee's position that the loan in question is, in fact, subject to the provisions of the TILA. Trustee's position is supported by the fact that the TILA is to be liberally construed in favor of the borrower, as noted above. Furthermore, as noted by the Supreme Court of Iowa in *The Toy National Bank of Sioux City v. McGarr,* 286 N.W.2d 376, 379 (1979), in the case of a mixed use loan, *i.e.,* one used for both personal and business purposes, the Federal Reserve Board has suggested that a court must balance the conflicting uses determine which

4

TRUSTEE'S STATUS CONFERENCE STATEMENT

10185 103471.DOC

purpose predominates. The Supreme Court of Iowa noted that the suggestion of the Federal Reserve Board is contained in staff letter No. 374, (1969-74 Transfer Binder) Consumer Credit Guide (CCH) s 30,552 (July 17, 1970), wherein the Federal Reserve Board stated the "[w]hile the definition of 'primarily' is a matter for the courts to decide, we advise, as an abundance of caution, to comply with the rescission provision of the Act where the use of the proceeds is questionable." *Id.*

An analysis of the Note demonstrates that the Note violates the TILA. Section 1639(d) of the TILA provides, in relevant part, that "[a] mortgage referred to in section 1602(aa) of this title may not provide for an interest rate applicable after default that is higher than the interest that applies before default. . . ." In the instant case, the Note provides that in the event of a default the interest rate increases by 3% over the non-default rate of 16%, *i.e.,* to 19%. Thus, the Note violates the provisions of Section 1629(d).

Section 1639(j) of the TILA, entitled "Consequences of failure to comply" provides as follows:
> Any mortgage that contains a provision prohibited by this section shall be deemed a failure to deliver the material disclosures required under this subchapter, for the purpose of section 1635 of this title.

Section 1635(f) provides, in relevant part, that the obligor has three years from the date of consummation of the transaction or upon the sale of the property, whichever occurs first, within which to exercise the right to rescind the transaction.

Section 1635(b) provides, in relevant part, that when an obligor exercises his right to rescind "he is not liable for any finance or other charge, and any security interest given by the obligor . . . becomes void upon such a rescission. . . ." *See also,* Regulation Z § 226.15(d)(1) ("When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void, and the consumer shall not be liable for any amount, including any finance charge.")[2]

---

[2] As noted by the Court in *In re Rodrigues,* 15 U.S.C. §1640(a)(2), "the TILA viest the board of Governors of the Federal Reserve Board with broad power to promulgate regulations regarding the interpretation and implementation of the Act. *See* 15 U.S.C. § 1604(a), and in *Morning v. Family Publisnations Serv.* 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973), the Supreme Court upheld this delegation of authority. The Federal Reserve Board regulations set forth at 12 CFR Part 226, are commonly known as "Regulation Z," . . . . 278 B.R. 686-687. The Court in *Rodrigues* also noted that "Regulation Z is promulgated by the Federal Reserve Board, and because Congress has 'specifically designated the Federal Reserve Board and staff as the primary source of interpretation and application of truth-in-lending law,' there is no question as to the propriety of relying on Regulation Z to form this opinion [Citation omitted]." *Id.*

Furthermore, included among the sanctions for violating the TILA is that the balance due on the loan is to be reclassified as an unsecured claim that is subject to discharge in the bankruptcy case. *See In re Rodrigues,* 278 B.R. 683, 689 (Bkrtcy.D.R.I. 2002), citing 15 U.S.C. §1635(b) and *Williams v. Gelt Fin. Corp.,* 237 B.R. 590, 598-99 (E.D.Pa.1999).

Furthermore, statutory damages of not less than $200.00 nor more than $2,000.00 must be imposed for violations of the TILA. 15 U.S.C. §1640(a)(2)(A)(iii). In addition, Section 1640(a)(3) provides that a party that is successful in an action to rescind is entitled to recover the costs of the action, together with a reasonable attorney's fee as determined by the court. Also, Section 1640(a)(4) provides that "in the case of a failure to comply with any requirement under section 1639 of this title, an amount equal to the sum of all finance charges and fees paid by the consumer" is recoverable "unless the creditor demonstrates that the failure to comply is not material."

The debtor's claim for damages for violation of the TILA is enforceable by the trustee of the debtor's bankruptcy estate. *See Riggs v. Government Emp. Financial Corp.,* 623 F.2d 68, 73 (9th Cir. 1980) (Decided under the Bankruptcy Act.)

## IV. CONCLUSION

Based upon the foregoing analysis, it is the position of Trustee that she has the right to file an adversary proceeding against Lenders seeking to rescind the loan made by them to the debtor. In such adversary proceeding Trustee will seek (i) to avoid the Lender's security interest in the debtor's residence, (ii) to obtain a judgment from this Court determining that the amount due to Lenders be allowed only as a prepetition general unsecured claim, (iii) an award to Trustee of an amount equal to the sum of all finance charges and fees paid by the debtor, (iv) an award to Trustee of damages not to exceed $2,000.00 and (v) an award to Trustee of her costs of suit and recovery of her reasonable attorney' fees.

DATED: May 15, 2006

GOLDBERG, STINNETT, MEYERS & DAVIS
A Professional Corporation

By:    /s/ Terrance L. Stinnett
      Attorneys for Andrea A. Wirum, Trustee

LAW OFFICES
GOLDBERG, STINNETT, MEYERS & DAVIS
A PROFESSIONAL CORPORATION
44 MONTGOMERY STREET, SUITE 2900
SAN FRANCISCO, CALIFORNIA 94104

TRUSTEE'S STATUS CONFERENCE STATEMENT

10185 103471.DOC