**JENKINS MULLIGAN & GABRIEL L.L.P.**
Daniel J. Mulligan [SBN: 103129]
dan@jmglawoffices.com
Larry W. Gabriel [SBN: 68329]
lgabriel@jmglawoffices.com
Thomas A. Jenkins [SBN: 92213]
tom@jmglawoffices.com
660 Market Street, Third Floor
San Francisco CA 94104
Tel: (415) 982-8500
Fax: (415) 982-8515

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLETCHER HARTWELL HYLER and SHERYL ROOT HYLER,<br><br>            Plaintiffs,<br><br>     vs.<br><br>INVESTMENT GRADE LOANS, INC., et.al.,<br><br>            Defendants. | **Case No.: 07-CV-03180 WHA**<br><br>**PLAINTIFFS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER**<br><br>**Date:  August 1, 2007**<br>**Time:  2:00 p.m.**<br>**Ctrm:  9**<br>**Hon. William H. Alsup** |

In their opposition to this request, defendants correctly state the standards for the issuance of a restraining order. However, under these well established standards, it is clear that there are adequate grounds for the injunction to issue.

Before addressing the issues, plaintiffs need to correct several misimpressions left by the opposition. First, defendants make much of the fact that the property was not refinanced in the course of the bankruptcy. The fact is, it proved impossible to close any loan for the simple reason that the property was in bankruptcy. *See, Declaration of Fletcher Hyler and Declaration of Mitchell Chernock, filed herewith.* Now that the property has been removed from the bankruptcy estate, the refinancing is moving forward. *Id.* Second, defendants have more than adequate security. The property has recently been reappraised at $11M, leaving more than enough equity to secure IGL. *Id.* Finally, as noted in plaintiffs' application papers, the property is unique. Should defendants not prevail in this action, the monetary claim for wrongful foreclosure cannot really compensate plaintiffs for their loss.

## LEGAL DISCUSSION

As noted previously, preliminary injunctive relief is a provisional remedy designed to preserve the status quo and prevent irreparable loss of rights prior to judgment. *Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1422 (9th Cir. 1984).* A party seeking temporary injunctive relief under *Rule 65* bears the burden of showing either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) that serious questions are raised and the balance of hardships tips sharply in the moving party's favor. *Walczak v. EPL Prolong, Inc., 198 F.3d 725, 730-31 (9th Cir. 1999)*; *Rodeo Collection, Ltd. v. West Seventh, 812 F.2d 1215, 1217 (9th Cir. 1987).* Plaintiffs will address each in turn.

### A. Likelihood of Success

From defendants' opposition papers, it seems clear that there is no real dispute that a TILA violation occurred, if the loan was not made for business purposes. To date, defendants have not produced any documentary evidence to support their contention that the

1    subject loan was actually for business purposes.  Not even a loan application has been

2    provided.  Instead, the defendants rely on (1) a 2002 tax court decision involving Mr. Hyler,

3    which refers to the "perceived necessity of maintaining his residence and his lifestyle for

4    business reasons" and (2) written communications involving a broker named Gary Bowers,

5    who was involved in obtaining the loan, regarding the fact that Mr. Hyler's reduced income

6    had led him to seek the re-financing of his residence by late 2003.  Neither of these writings

7    establish that the loan was actually made for business purposes. Rather, they establish that

8    Mr. Hyler had suffered business reversals that were a reason that the loan was needed, a fact

9    he freely admits.  *Se, Hyler Declaration, filed herewith, para. 4.*  However, the cause of the

10   financial difficulties is completely different from the purpose of the loan.  *Id.*

11        In making this argument, the defendants ignore both how the loan proceeds were used

12   by Mr. Hyler as well as established case law.  *See, e.g., Cashmere Valley Bank v. Terry R.*

13   *Brender* (2005) 128 Wn. App. 497, 116 P.3d 421.  As described in the Complaint filed by the

14   trustee, it is undisputed that the Hylers used the loan proceeds to pay, primarily, personal

15   obligations:  the holder of the first deed of trust against their residence; the Internal Revenue

16   Service; the California Franchise Tax Board; the San Mateo County Tax Collector; and IGL

17   for broker loan fees, document preparation, and accrued interest.  All of these payments were

18   for personal, family or household purposes.  *See, also, Hyler Declaration, filed herewith,*

19   *para. 4.*

20        Courts generally use one of three approaches to determine if a loan was for a business

21   or personal purpose.  Under the quantitative approach, the court examines the use of the

22   proceeds.  If over 50% went to personal use, then it is not a business loan.  Under the original

23   purpose approach, the Court examines the original character and purpose of the loan.  Under

24   the "all circumstances" approach, the court considers the entire transaction. *Cashmere Valley*

25   *Bank v. Brender,* 28 Wn. App. 497 at 503-507, 116 P.3d at 424 – 426.

26        Here, no evidence has, or can be, offered to suggest that any of the proceeds were

27   used to support a business (i.e., to hire more employees or expand a product line), build

     additional office space, or make an acquisition to support a going concern.  Under any of the

1  three tests discussed in *Cashmere Valley Bank, supra, (*i.e., "quantitative approach,"

2  "original purpose", or "all circumstances"), a court would conclude as a matter of law that

3  the loan was arranged for personal purposes. This is particularly true under the quantitative

4  approach, the test ultimately applied in *Cashmere Valley Bank*, because the majority (if not

5  all) of the loan proceeds were used for personal purposes. [1]

6      Further, defendants' position now is completely at odds with their conduct at the time

7  the loan was actually made. As they concede in their memorandum, defendants did provide

8  APR disclosures and a Notice of Right To Cancel, both TILA disclosures that would not

9  apply to a loan for business purposes. From their contemporaneous conduct, defendants

10  rather clearly understood that this loan was for personal, not business, purposes.

11      Given the actual facts, defendants' conduct at the time of origination, and the proper

12  legal analysis, plaintiffs submit that they have established a likelihood of success on the

13  merits.

14      **B. Irreparable Harm**

15      As noted in plaintiffs' opening papers, this is a unique property. To allow the

16  foreclosure sale to proceed while this action is undecided would cause irreparable harm, as

17  simple monetary damages would never be able to replace the home.

18      As noted above, plaintiffs have a good likelihood of success on the merits. If they

19  succeed, TILA, at Section 1635(b) provides, in relevant part, that when an obligor exercises

20  his right to rescind "he is not liable for any finance or other charge, and any security interest

21  given by the obligor . . .becomes void upon such a rescission. . . ." *See also,* Regulation Z §

22  226.15(d)(1) ("When a consumer rescinds a transaction, the security interest giving rise to

23  the right of rescission becomes void, and the consumer shall not be liable for any amount,

24  including any finance charge.")

25

26

---

[1]  Plaintiffs are unable to find a definitive 9th circuit case as to which standard to apply. However, the Court implicitly approved the quantitative approach in *Semar v. Platte Vlly Fed Savings & Loan*, 791 F.2d 699 (9th Cir. 1986) where it held that a loan was for personal purposes if only 10% of the proceeds went to a business use.

Simply put, if plaintiffs succeed, the security interest upon which defendants are seeking to foreclose would be deemed void.  If this happens after the foreclosure is completed, this remedy would be meaningless.  While plaintiffs would then have a valid claim for wrongful foreclosure, they would have already lost their home.

Thus, plaintiffs meet the first standard for the issuance of an injunction – likelihood of success and irreparable harm – and, for these reasons, request that the injunction issue pending the outcome of this case.

### C.  Serious Questions and Balance of Hardship

As noted, an alternative basis for granting a preliminary injunction is that serious questions are raised and the balance of hardships tilts in the moving parties' favor.

Plaintiffs have already discussed, above, the likelihood of success on the merits.  At the very least, the evidence and legal analyses show that a serious question about the propriety of the loan, and the application of TILA to the loan, exist here. The balance of hardship also tilts toward plaintiffs' position.  As noted, IGL is completely secured by the value of the property.  Equally important, IGL – unlike plaintiffs – can be made completely whole by money damages.

Finally, the amount of time required to conclude this action is relatively small.  As is apparent, there are few, if any, disputed facts and little, or no, discovery, needed.  Plaintiffs submit that the case could be concluded promptly by cross-motions for summary judgment meaning that neither side would have much longer to wait to resolve their dispute.

### D.  Only A Minimal Bond Is Needed

While a bond may be required, there is absolutely no need for the amount demanded by defendants for two reasons.  First, as noted, IGL is completely secured by the value of the property.  While the timing of an eventual payment to IGL needs to await the conclusion of this action, there is no real risk that payment cannot be made.

Second, the amount that IGL will be entitled to, if plaintiffs succeed, is significantly less than claimed.  As noted, upon rescission of the loan, the borrower is not liable for "any finance or other charge". *15 U.S.C. 1635(b).*  As a practical matter, this means that the

1  amount to be repaid to IGL is the original principal balance, less all of the loan charges, less

2  all of the payments made. *Semar v. Platte, supra.* This is much less than even the original

3  balance and, as noted, is completely secured by the value of the property.

4     For these reasons, plaintiffs request that only a nominal bond be required.

5  **CONCLUSION**

6     For all of the above stated reasons, plaintiffs respectfully request that the preliminary

7  injunction issue, halting any sale of the property until this matter is decided.

8

9                              Respectfully submitted,

10

11                         JENKINS MULLIGAN & GABRIEL, LLP

12

13                         By:  /s/ Daniel J. Mulligan

14

15

16

17

18

19

20

21

22

23

24

25

26