Fletcher Hartwell Hyler, in propria persona
Sheryl Root Hyler, in propria persona
3130 Alpine Road, Suite 288
Portola Valley, CA 94028
(650)234-8160
budh@logmkt.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FLETCHER HARTWELL HYLER AND** ) <br> **SHERYL ROOT HYLER,** ) <br>        **Plaintiff,** ) <br> ) <br>       **vs.** ) <br> ) <br> **INVESTMENT GRADE LOANS, INC., ET** ) <br> ) <br> **AL.,,** ) <br> ) <br>        **Defendant** ) <br> ) | **Case No.: A07-CV-03180 WHA** <br><br> **PLAINTIFF'S F.R.C.P. 60 (b)(3) MOTION TO SET ASIDE JUDGMENT AND SETTLEMENT AGREEMENT FOR FRAUD, MISREPRESENTATION AND MISCONDUCT BY OPPOSING PARTY** |

///

///

///

///

///

///

///

///

///

///

**PLAINTIFF'S F.R.C.P. 60 (b)(3) MOTION TO SET ASIDE JUDGMENT AND SETTLEMENT AGREEMENT FOR FRAUD, MISREPRESENTATION AND MISCONDUCT BY OPPOSING PARTY**

1

1

## TABLE OF AUTHORITIES

2

1. Cases

*Lazar v. Superior Court,* 12 Cal.4th 631, 909 P.2d 981, 49 Cal.Rptr.2d 377 (1996) .....16

*McIntosh v. Mills* 121 Cal.App.4th 333, 344, 346, 17 Cal.Rptr.3d 66 (2004)……………...18

*Tiedje v. Aluminum Paper Milling Co.* 46 Cal.2d 450, 454, 296 P.2d 554 (1956)............. 21

*Triangle Capital Corp. v. I.M.C. Management Corp.* 127 F.R.D. 444 (D.Mass. 1989)...15, 16

*U.S. v. Baus,* 834 F.2d 1114, 1123 (1st Cir.1987).......................................................15, 16

*Village Northridge Homeowners Assn. v. State Farm Fire and Cas. Co.* 157 Cal.App.4th 1416, 69 Cal.Rptr.3d 55 (2007)........................................................................................16

2. Statutes

California Financial Code § 4979...............................................................................14

California Civil Code § 1709...................................................................................16

Civil Code §1572 .................................................................................................17

California Financial Code § 4970(b),(d) ....................................................................17

Cal. Civil Code § 1689 (b)(1) .................................................................................18

Civ. Code § 1595 .................................................................................................18

15 U.S.C. §§ 1601.................................................................................4, 7, 19, 21

15 U.S.C. § 1639(d) .............................................................................................20

11 U.S.C. § 1639(d) .............................................................................................20

15 U.S.C. § 1635(b) .............................................................................................20

Cal. Financial Code § 4970 *et seq*..............................................................................21

Cal. Civ. Code § 1689(b), .......................................................................................18

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S F.R.C.P. 60 (b)(3) MOTION TO SET ASIDE
JUDGMENT AND SETTLEMENT AGREEMENT FOR
FRAUD, MISREPRESENTATION AND MISCONDUCT
BY OPPOSING PARTY

2

1

### 3. Federal Rules and Regulations

2

Federal Rule of Civil Procedure 60(b)(3) ...............................................4, 5, 7, 15, 16, 18

3

Federal Rule of Civil Procedure 60(b) ........................................................................15

4

Fed.R.Civ.Proc. 60(d)(3)...........................................................................................16

5

12 C.F.R. Pt. 226 et seq..............................................................................................19

6

7

15 U.S.C. § 1602(aa) (A)....................................................................................... 19, 20

8

12 C.F.R. § 226.32(a)(I)............................................................................................20

9

12 C.F.R. § 236.32(d) ..............................................................................................20

10

12 C.F.R.§ 226.23(d)(1) ...........................................................................................20

11

### 4. Other Authorities

12

*Forms of Pleading and Practice,* Matthew Bender, "Contracts" §140.24[1] ..................... 18

13

Rule of Professional Conduct §3-200(A) ........................................................................17

14

15

Witkin, Summary of Cal. Law, (9th ed. 1988) Torts, § 676, p. 788 ....................................16

16

17

18

19

20

21

22

23

24

25

26

**PLAINTIFF'S F.R.C.P. 60 (b)(3) MOTION TO SET ASIDE
JUDGMENT AND SETTLEMENT AGREEMENT FOR
FRAUD, MISREPRESENTATION AND MISCONDUCT
BY OPPOSING PARTY**

3

## I. NOTICE OF MOTION

COME NOW Plaintiffs Fletcher Hartwell Hyler and Sheryl Root Hyler, and hereby give notice that argument will be heard on Plaintiff's Federal Rule of Civil Procedure 60(b)(3) Motion to Set Aside Judgment and Settlement Agreement for Fraud, Misrepresentation and Misconduct by Opposing Party, on Thursday, August 28, 2008, at 8:00 a.m. before the Honorable William Alsup in Courtroom 9 of the above-captioned Court, located at 450 Golden Gate Avenue, San Francisco, California 94012. This Motion will be made in conjunction with the subjoined Memorandum of Points and Authorities, and the Declaration of Fletcher Hartwell Hyler and Request for Judicial Notice submitted herewith, and the records and file herein.

## II. BRIEF STATEMENT OF BASIS FOR MOTION

Defendants repeatedly misrepresented to Plaintiffs and to this Court that their understanding of the purpose of the loan which is the subject of this litigation was business-related and not personal. This was the sole disputed fact in this case brought under the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.* In reliance on these misrepresentations and the uncertainties caused thereby, Plaintiffs entered into a Compromise, Settlement and Mutual Release Agreement ("Settlement Agreement") on disadvantageous terms, and agreed to dismiss this action. Unbeknownst to Plaintiffs, just two weeks before Defendants made the above-referenced misrepresentations to this Court, they admitted to the California Department of Real Estate ("DRE") that the subject loans were personal, rather than for business purposes. Had Defendants not made the above-mentioned false testimony and representations to this Court, Plaintiffs would not have settled on such disadvantageous terms, since the question of personal v. business purpose behind the subject loan was the sole issue which would have potentially required a trial in this matter, or otherwise caused Plaintiffs to lose. Moreover, as Defendants' admission to the DRE made clear, the subject loan violated TILA, yet the Agreement the Plaintiffs were forced to sign (under threat of immediate eviction from their home) called for repayment of this unlawful loan, and hence itself was void. Consequently, having discovered the falsity of Defendants' representations and testimony, and the illegality of

PLAINTIFF'S F.R.C.P. 60 (b)(3) MOTION TO SET ASIDE
JUDGMENT AND SETTLEMENT AGREEMENT FOR
FRAUD, MISREPRESENTATION AND MISCONDUCT
BY OPPOSING PARTY

4

the consideration for the Agreement, pursuant to Fed.R.Civ.Proc. 60(b)(3) Plaintiffs now seek to set aside the stipulated Order Dismissing Action dated September 7, 2007 in this case, to rescind the Agreement, and to proceed with the subject litigation.

## III. STATEMENT OF FACTS

### A. Transaction History.

On March 3, 2004, Plaintiffs Fletcher Harwell Hyler and Sheryl S. Root-Hyler (hereinafter "the Hylers") borrowed the sum of $1,232,500.00 (the "Loan Transaction") from the following defendants: (1) Lincoln Trust Company, Custodian FBO Doug Pickering, IRA as to an undivided 740/12325 interest, (2) Chern S. Lin and Felicia Lin, husband and wife as community property as to an undivided 3000/12325 interest, (3) Janice Tempey and Roy S. Wolf, husband and wife as community property as to an undivided 26.00/12325 interest, (4) Thomas C. O'Connell, Jr. and Janice K. O'Grady, husband and wife as community property as to an undivided 1235/12325 interest, (5) Pensco Trust Company, Custodian FBO John A Snyder IRA, as to an undivided 750/12325 interest, (6) Pensco Trust Company, Custodian FBO Phil Ahlfeldt, IRA, as to an undivided 3000/12325 interest and (7) John Stevens, an unmarried man as to an undivided 1000/12325 interest (hereinafter collectively referred to as the "Lender Defendants"). [Declaration of Fletcher Hartwell Hyler in Support of Plaintiff's F.R.C..P. 60(b)(3) Motion to Set Aside Judgment and Settlement Agreement for Fraud, Misrepresentation and Misconduct by Opposing Party ("Hyler Declaration" or "Hyler Decl."), ¶ 2.]

The Loan Transaction is evidenced by a Note Secured By A Deed Of Trust (the "Note") dated February 19, 2004, and executed on February 20, 2004, a copy of which is attached to the Hyler Declaration as Exhibit "A". The Note is secured by the lien of a Deed of Trust dated February 20, 2004, a copy of which is attached to the Hyler Declaration as Exhibit "B". This Deed of Trust was recorded on March 3, 3004 in the Official Records of San Mateo County as Document No. 2004-038332. This Deed of Trust constituted a lien against the residential real property owned at the time by Plaintiffs, the Hylers, commonly known as

5070 Alpine Road, Portola Valley, California 94028 (hereinafter the "Hyler Residence").
[Hyler Decl., ¶ 3.]

The Loan Transaction was arranged by Defendant Investment Grade Loans, Inc. ("IGL") acting as a mortgage broker on behalf of the Lender Defendants. At all relevant times, Andrew Lewis was the C.E.O. of IGL and its licensed broker. [Hyler Decl., ¶ 4.]

Section 3 of the Note provided for an interest rate of 16.0%, payable interest only for a period of five (5) years, with a balloon payment due on April 1, 2009. Section 4 (A) of the Note provided for a late charge of 10% of the amount of any overdue payment, and Section 4 (B) of the Note provided that in the event of a default the applicable interest rate shall be "three (3%) in excess of the interest rate set forth in Section 3." [Hyler Decl., ¶ 5.]

The major non-closing costs proceeds from the Loan Transaction were used by Plaintiffs as follows: (1) $320,536.07 was disbursed to First Bank and Trust to cure defaults under the loan secured by the first deed of trust against the Hyler Residence, (2) $16,968.91 was disbursed to the California Franchise Tax Board, (3) $624,789.08 was disbursed to the Internal Revenue Service for payment of personal tax liens, (4) $85,995.53 was disbursed to the San Mateo County Tax Collector for payment of real property taxes secured by the Hyler Residence, (5) $16,433,49 was disbursed to Defendant IGL for the account of the Lender Defendants on account of interest from March 2, 2004 to April 1, 2004, (6) $86,275.00 was disbursed to Defendant IGL for a mortgage broker loan fee, (7) $3,000.00 was disbursed to Defendant IGL for document preparation, (8) $36,975.00 was disbursed to The Bowers Group for a loan fee, (9) $38,202.01 was disbursed to the Hylers, and (10) $3,175.00 was disbursed to Chicago Title Company for miscellaneous closing costs, all as more fully set forth in the BUYER'S/BORROWER'S SETTLEMENT STATEMENT dated March 3, 2004 attached to the Hyler Declaration as Exhibit "C." [Hyler Decl., ¶ 6.]

Of the sum of $624,789.089 disbursed to the Internal Revenue Service, the sum of approximately of $310,368.59 was due from Mr. Hyler for a tax penalty for which he was personally liable, and the balance of this sum was due to the Internal Revenue Service from Mr. Hyler for personal income taxes he owed.        [Hyler Decl., ¶ 7.]

PLAINTIFF'S F.R.C.P. 60 (b)(3) MOTION TO SET ASIDE
JUDGMENT AND SETTLEMENT AGREEMENT FOR
FRAUD, MISREPRESENTATION AND MISCONDUCT
BY OPPOSING PARTY

6

1    The Loan Transaction proceeds in the sum of $38,202.01 that were disbursed to

2  Plaintiffs were used by them for personal expenses. [Hyler Decl., ¶ 8.]

3    Shortly after agreeing upon the above-mentioned loan transaction, it became apparent to

4  Plaintiffs that they would require additional funds to cure their debts, and they requested that

5  an additional $100,000.00 be tacked on to the loan. Gary Bowers was the broker involved in

6  this loan as he was the first loan. Acting on the same loan application, Defendants made an

7  additional $100,000.00 loan to Plaintiffs, which later became the subject of an investigation by

8  the California Department of Real Estate ("DRE"), as more fully described below. [Hyler

9  Decl., ¶ 9.]

10

11    Due to the "dot com bust" and its fallout, Plaintiffs' personal income was adversely

12  affected, and they defaulted on both of these loans shortly after they were made. [Hyler Decl.,

13  ¶ 10.]

14    **B. Procedural History.**

15    Mr. Hyler filed bankruptcy in October, 2004. in the Northern District of California

16  under Chapter 11 of the Bankruptcy Code. A trustee was appointed. [Hyler Decl., ¶11.]

17    On September 22, 2006, the bankruptcy trustee's attorney, Terrance Stinnett, Esq., sent

18  a letter to Michael Stone, Esq., attorney for the Lender Defendants, rescinding the above-

19  referenced $1,232,500.00 Loan Transaction for violation of the Federal Truth in Lending Act

20  (TILA), 15 U.S.C. § 1601 *et seq.* The bankruptcy trustee initiated an action against

21  Defendants on or about October 13, 2006, seeking rescission and damages against Defendants

22  for TILA violations. Hyler Decl., ¶ 13; Request for Taking of Judicial Notice in Support of

23  Plaintiffs' F.R.C.P. 60(b)(3) Motion to Set Aside Judgment for Fraud, Misrepresentation and

24  Other Misconduct by Opposing Party ("RJN"), Exhibit 1. This was done after the Trustee did

25

26

PLAINTIFF'S F.R.C.P. 60 (b)(3) MOTION TO SET ASIDE
JUDGMENT AND SETTLEMENT AGREEMENT FOR
FRAUD, MISREPRESENTATION AND   MISCONDUCT
BY OPPOSING PARTY

7

an extensive analysis of the loan and the TILA issues, making certain that the loan was a consumer loan and that TILA was violated.

> However, it is Trustee's position, based upon the information provided by the debtor as to the use of the loan proceeds, that the loan was NOT obtained primarily for business, commercial, or agricultural purposes.

[Hyler Trustee's Status Conference Statement TILA allegation, May 19th 2006, p. 4, ll. 11 – 13, RJN Ex. J.]

In 2007, the trustee decided to auction the claim against Defendants. Plaintiffs participated in the auction and purchased the claim for $200,000. The Court approved the sale and then approved the abandonment of the home as property of the estate. By Order effective June 22, 2007, the Bankruptcy Court transferred this matter to this court, substituting the Hylers as Plaintiffs in place of the trustee. [Hyler Decl., ¶ 13.]

Plaintiffs were actively engaged in attempting to refinance the loan at issue. Plaintiffs received a Notice of Sale from IGL on June 29, 2007. [Hyler Decl., ¶ 14.]

Once the property was removed from the bankruptcy estate and this action had been transferred to this court, the efforts to refinance proceeded. Plaintiffs were advised that a complete refinance had been arranged, set to close and fund prior to the scheduled date of the trustee's sale, which was July 18, 2007. To help accomplish this refinance, without affecting the claims in this action, Plaintiffs stipulated with IGL to allow IGL to be paid the principal balance of the loan out of the planned escrow, with the remainder of the funds being held in escrow until the completion of this action. That stipulation was filed with this court on July 12, 2007. [Hyler Decl., ¶ 15.]

Although Plaintiffs were advised that the loan was set to close, as of July 16, 2007, due to changes in the credit industry the loan documents had not been presented. Plaintiffs had been

advised that it might take 30 – 40 days to arrange a new loan if the loan under consideration as of July 16, 2007 did not go forward.  (The market for second mortgages was deteriorating rapidly during this time frame.)  Under pressure from the looming date for selling their house at foreclosure, on July 16, 2007, Plaintiffs brought an Ex Parte Application for a Temporary Protective Order ("TPO Application").  On August 1, 2007, this Court issued an Order granting the TPO, upon the following conditions:

> First, plaintiffs must post a bond in the amount of $835,000 no later than AUGUST 15, 2007, AT NOON (which amount plaintiffs concede is due no matter what and which will be posted by such date). Alternatively, said amount of cash may be paid by defendants no later than AUGUST 15, 2007, AT NOON.

> Second, plaintiffs' counsel must file a motion for summary judgment to be heard on OCTOBER 11, 2007, AT 8:00 A.M., with a cross-motion to be filed by defendants, all on the schedule discussed at the hearing....

> If either of these two conditions are not met, defendants are free to sell the property under the power of sale without further order of the Court.

Order Granting Temporary Restraining Order, pp. 1:23-2:4.  [Hyler Decl., ¶ 16; RJN, Ex. B.]

## C.  The Fraud/Misrepresentation/Misconduct

Throughout the litigation, Defendants represented to both the Bankruptcy Court and this Court that they did and do not make consumer loans.  For example, in their Answer to the Bankruptcy Court, they made the following allegations:

> 11.    Answering the allegations in paragraph 11, Defendants admit the allegations contained in lines 17-22 of said paragraph, and admit the common address of the property that is security; Defendants are informed and believe, however, that said property is not just the residence of Debtor but is also his business office and used for Debtor's business, and based thereon deny the characterization contained in said paragraph.

PLAINTIFF'S F.R.C.P. 60 (b)(3) MOTION TO SET ASIDE
JUDGMENT AND SETTLEMENT AGREEMENT FOR
FRAUD, MISREPRESENTATION AND  MISCONDUCT
BY OPPOSING PARTY

9

* * *

14.    Answering the allegations in paragraph 14, Defendants admit that the Borrower's Settlement Statement is attached as Exhibit "C" and that various disbursements were made from the escrow as directed by Debtor; Defendants deny, however, any characterization made by Plaintiff of those disbursements, and further deny that how Debtor caused the loan to be disbursed has any relevance to the matters herein.

* * *

16.    Answering the allegations in paragraph 16, Defendants lack sufficient information and belief to adequately answer said allegations, and based thereon deny said allegations; particularly Defendants deny that they were aware, or consented to, use of any of the loan proceeds by Debtor "for personal expenses".

17.    Answering the allegations in paragraph 17, Defendants deny each and every allegation therein, singularly and plurally, and specifically allege that the loan transaction was presented to them as a business loan by Debtor and that it was approved and made as such.

[RJN, Ex. C.]

(Point 14 is an especially interesting denial since TILA primarily determines the issue of

consumer verse business loan based on the purpose and use of the funds.)

In a letter to Plaintiffs' attorney Edward Simpson, Esq. dated April 12, 2006,

Defendants' attorney again represented that the subject loan was a business loan to which TILA

did/does not apply:

Next, you should do more research on the Truth in Lending Act, as it neither applies to "arrangers of credit" (as IGL was) nor to business loans such as Mr. Hyler made *[sic]* ....

PLAINTIFF'S F.R.C.P. 60 (b)(3) MOTION TO SET ASIDE
JUDGMENT AND SETTLEMENT AGREEMENT FOR
FRAUD, MISREPRESENTATION AND   MISCONDUCT
BY OPPOSING PARTY

10

[Hyler Decl., ¶ 17, and Exhibit E thereto.]

In the instant action, on July 25, 2007, Defendants filed an Opposition to the TRO Application with Judge Alsup, which noted that loans made for business purposes are exempt from the Truth in Lending Act, and made the following factual representation:

> **Investment Grade Loans, Inc. (hereinafter "IGL") does not make consumer loans.**

*[Emphasis supplied.]* Memorandum of Points and Authorities in Opposition to Request for Preliminary Injunction, p. 4, l. 15.   [RJN, Exhibit D.]  This was the only defense raised by Defendants to the merits of Plaintiffs' TILA claim in their Opposition.

In further support of their opposition to the TRO Application to Judge Alsup, Defendants submitted the Declaration of Michael E. Stone in Opposition to Request for Preliminary Injunction (Mr. Stone was Defendants' attorney in this action) in which he testified under penalty of perjury:

> Investment Grade Loans, Inc. is a licensed real estate mortgage brokerage that makes "asset based loans" for non-consumer purposes. I have represented it in numerous transactions over the years, and every loan was secured by real property that was not the borrower's residence, including apartment buildings, condominium developments, golf courses, office buildings, construction loans, and land development loans.

*Id.* at p. 2, ll. 17-21. [RJN, Ex. E.]

In open court before Judge Alsup on August 1, 2007, Defendants' counsel Mr. Siegel represented as follows:

> MR. SIEGEL: HERE'S WHY I SAY THAT:  BECAUSE WE KNOW THAT UNDER THE TRUTH IN LENDING ACT, THIS LOAN IS EXEMPT BECAUSE IT WAS FOR A BUSINESS PURPOSE.....

PLAINTIFF'S F.R.C.P. 60 (b)(3) MOTION TO SET ASIDE JUDGMENT AND SETTLEMENT AGREEMENT FOR FRAUD, MISREPRESENTATION AND MISCONDUCT BY OPPOSING PARTY

11

1   MY CLIENT ONLY MAKES BUSINESS LOANS.

2
3   Transcript of Proceedings, August 1, 2007, p. 7, ll. 8 - 13. [RJN, Ex. F.]  Three times within
4   two pages of the transcript IGL reaffirmed in open Court that "They only made business
5   loans".  Transcript of Proceedings, August 1, 2007, p. 7, l. 13, p.8 ll. 15 and 22 [RJN, Ex.
6   F.]

7       **D. The Settlement Agreement.**

8       Due to the worsening mortgage crisis, the plaintiffs were unable to fund the
9   $835,000.00 bond.  On August 16, 2007, a foreclosure sale was conducted, at which the
10  Lender Defendants bid in the alleged debt owed by Plaintiffs, and purchased the Hyler
11  Residence.  (According to appraisals performed in March and April, 2007, the Hyler
12  Residence was worth $11,000,000; the loan secured by a first deed of trust on the property
13  was for $4,000,000.00.)   [Hyler Decl. ¶ 18.]

14
15      At that time, however, Plaintiffs remained in possession of the premises.  As to the
16  instant litigation, Plaintiffs were forced to contemplate the possibility that the Court might
17  believe Defendants regarding their asserted understanding that the loan was made for a
18  business purpose loan; and the apparent fact (which Plaintiffs later discovered to be false) that
19  the Defendants themselves believed they had made the subject loan for business purposes.
20  [Hyler Decl. ¶ 20.]
21

22      Under explicit threat of immediate eviction unless they agreed to settle on Defendants'
23  terms, and confronted with the representations and testimony of Defendants' counsel regarding
24  their asserted understanding that the loan was made for business purposes, on August 31,
25  2007, Plaintiffs capitulated and agreed to the terms insisted upon by Defendants in a
26

PLAINTIFF'S F.R.C.P. 60 (b)(3) MOTION TO SET ASIDE
JUDGMENT AND SETTLEMENT AGREEMENT FOR
FRAUD, MISREPRESENTATION AND MISCONDUCT
BY OPPOSING PARTY

12

Compromise, Settlement and Mutual Release Agreement ("Settlement Agreement"). Pursuant to this Agreement, Plaintiffs agreed to pay Defendants $200,000.00 for a 60 day option to repurchase their home for the sum of $2.1 million (still subject to the first deed of trust on the property), **or alternatively, to have the Trustee's sale rescinded and pay off the Lender Defendants' existing loans for $2.1 million** (a sum which included all principal, all accrued interest charges, attorneys' fees and costs). Plaintiffs further agreed to dismiss this action, and the Settlement Agreement parties agreed upon a mutual release and covenant not to sue. Andrew Lewis executed this Settlement Agreement as agent for all Defendants. The Settlement Agreement expressly reiterates that the Defendants denied all of Plaintiffs' contentions, including obviously the contention that the subject loan was for personal rather than business purposes. [Hyler Decl. ¶ 21, and Ex. F thereto.]

Pursuant to this Settlement Agreement, Plaintiffs paid $100,000.00 of the consideration for the option grant and stipulated to an Order Dismissing [this] Action, which was entered on September 6, 2007.   [RJN, Ex. G.]  Plaintiffs did not ultimately exercise the option, however, again due to problems with obtaining replacement financing. The Lender Defendants initiated an unlawful detainer action, and ultimately evicted Plaintiffs from their home in February, 2008. [Hyler Decl. ¶ 22.]

## E. The True Facts.

Unbeknownst to Plaintiffs before the time the TRO motion was heard before this court and before they executed the Settlement Agreement, on July 11, 2007, Andrew Lewis executed a Stipulation and Agreement ("Stipulation") with the California Department of Real Estate, in which he admitted that the $100,000.00 loan made to the Hylers (and consequently the subject

PLAINTIFF'S F.R.C.P. 60 (b)(3) MOTION TO SET ASIDE
JUDGMENT AND SETTLEMENT AGREEMENT FOR
FRAUD, MISREPRESENTATION AND   MISCONDUCT
BY OPPOSING PARTY

13

$1,232,500.00 made pursuant to the same loan application) was a consumer loan rather than a

business loan.

If IGL had indeed thought that the loan was a business loan, establishing this fact would

have caused the DRE action to be dismissed since California Financial Code § 4979.6 only

applies to consumer loans:

**Assembly Bill No. 489**

This bill would impose various requirements on consumer loans
secured by specified real property, defined as ''covered loans.''

''Covered loan'' means a consumer loan in which the original principal balance of the loan does not exceed
two hundred fifty thousand dollars ($250,000) in the case of a mortgage or deed of trust, and where one of
the following conditions are met:

*See*, Request for Taking of Judicial Notice, Exhibit A.  Mr. Andrews made this admission 14

days *before* his attorney represented point blank in the written Opposition to this court that Mr.

Andrews' company, IGL, made only business loans, and 21 days *before* his attorney made that

oral representation several times to Judge Alsup. [RJN, Exs. H and I.]  Plaintiffs discovered

Mr. Andrews' admission substantially after executing the Settlement Agreement.   Had

Plaintiffs known the actual facts, they would not have executed the Settlement Agreement or

stipulated to the Order Dismissing Action, but rather would have pursued this litigation to a

successful conclusion which would have resulted in a finding of wrongful foreclosure by the

Defendants. [Hyler Decl. ¶¶ 23, 24.]

Moreover, under the true facts, the Settlement Agreement itself was unlawful, in that it

called for the recreation of illegal loans and the repayment of unlawful loan interest; *i.e.,* since

Defendants admitted to the DRE that these were consumer loans, their terms violated TILA so

no interest was due, yet the Settlement Agreement required that repayment.

PLAINTIFF'S F.R.C.P. 60 (b)(3) MOTION TO SET ASIDE
JUDGMENT AND SETTLEMENT AGREEMENT FOR
FRAUD, MISREPRESENTATION AND  MISCONDUCT
BY OPPOSING PARTY

14

**F. Subsequent Events.**

Plaintiffs opposed Defendants' unlawful detainer proceeding in San Mateo Superior Court case no. CLJ 195919 but were evicted in February, 2008. That case is on appeal to the Superior Court. Throughout this time, Plaintiffs' income situation has been improving to close to where it was before the "dot com bust" and they have been attempting to obtain the financing necessary to repurchase their home, or if appropriate, upon return of title to them, refinance their existing lawful loans. [Hyler Decl. ¶ 25.]

## IV. LEGAL ANALYSIS

**A. A Fed.R.Civ.Proc. 60(b)(3) Motion is Appropriate to Set Aside a Settlement Agreement and Order of Dismissal Procured Through Fraud, Misrepresentation or Other Misconduct.**

Federal Rule of Civil Procedure 60(b) provides in pertinent part as follows:

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

* * *

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party....

Thus, in *Triangle Capital Corp. v. I.M.C. Management Corp.* 127 F.R.D. 444 (D.Mass. 1989), the court held:

Upon consideration of the most recent submissions, it appears that this court, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, has the authority to vacate the court-approved Settlement Agreement. *See U.S. v. Baus,* 834 F.2d 1114, 1123 (1st Cir.1987). Wright & Miller, Federal Practice and Procedure: Civil § 2860, at 187-188 (1973). Triangle claims that I.M.C. has

PLAINTIFF'S F.R.C.P. 60 (b)(3) MOTION TO SET ASIDE
JUDGMENT AND SETTLEMENT AGREEMENT FOR
FRAUD, MISREPRESENTATION AND MISCONDUCT
BY OPPOSING PARTY

15

engaged in fraudulent conduct and deliberate misrepresentations which, if proven, would entitle Triangle to relief pursuant to Fed.R.Civ.P. 60(b)(3).

\* \*

Therefore, an evidentiary hearing on the allegations made in Triangle's Motion to Vacate will be required. *Baus,* 834 F.2d at 1123

*Id.,* 127 F.R.D. at 446.

Similarly, California law allows for the rescission of settlement agreements due to fraud. *See, e.g., Village Northridge Homeowners Assn. v. State Farm Fire and Cas. Co.* 157 Cal.App.4th 1416, 69 Cal.Rptr.3d 551 (2007), and cases cited therein.

The standard for proving "fraud, misrepresentation or other misconduct" pursuant to Fed.R.Civ.Proc. 60(b)(3) is substantially lower than that for proving "fraud on the court" in an independent action, as allowed by Fed.R.Civ.Proc. 60(d)(3). Consequently, cases interpreting the "fraud on the court" standard are inapposite to this motion.

## B. Defendants Induced the Agreement Through Fraud or Misrepresentation, upon which Plaintiffs Justifiably Relied to their Detriment.

The elements of fraud, which give rise to the tort action of deceit, are (a) misrepresentation (false statement, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, *i.e.*, to induce reliance; (d) justifiable reliance; and (e) resulting damage. 5 Witkin, Summary of Cal. Law, (9th ed. 1988) Torts, § 676, p. 788; *see also,* California Civil Code § 1709; *Lazar v. Superior Court,* 12 Cal.4th 631, 909 P.2d 981, 49 Cal.Rptr.2d 377 (1996). Actual fraud consists of any of the following acts, committed by or with the connivance of a party to a contract with intent to deceive another party to the contract, or to induce the other party to enter into the contract:

PLAINTIFF'S F.R.C.P. 60 (b)(3) MOTION TO SET ASIDE
JUDGMENT AND SETTLEMENT AGREEMENT FOR
FRAUD, MISREPRESENTATION AND MISCONDUCT
BY OPPOSING PARTY

16

1. the suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

2. the positive assertion, in any manner not warranted by the information of the person making it, of that which is not true, though the person making the assertion believes it to be true;

3. the suppression of that which is true, by one having knowledge or belief of the fact;

4. a promise made without any intention of performing it; and

5. any other act fitted to deceive.

Civil Code §1572.

The falsity of Defendants' statements to Plaintiffs and this Court that the subject loan was for business rather than personal purposes is belied by the admission of Mr. Andrews, the person who arranged the loan for Defendants, and the signatory to the Agreement on Defendants' behalf, that the loans were violations of California's Predatory Lending law, which applies only to *consumer* loans. California Financial Code § 4970(b),(d). Defendants' knowledge of the falsity of these statements is proven by the fact that Mr. Andrews' admission predated his attorney's representations to this Court and his signature on the Agreement. Defendants' intent that Plaintiffs and this Court rely on the statements is evident from the contexts in which they were made: to convince Plaintiffs and this Court of the lack of merit in Plaintiffs' TILA claim. Plaintiffs justifiably relied upon Defendants' attorney's representations as being in good faith, and therefore potentially meritorious, because California's Rules of

Professional Conduct prohibit an attorney from conducting a defense in litigation "…without probable cause …" Rule of Professional Conduct §3-200(A). Plaintiffs were damaged by giving up their rights to pursue this litigation to successful conclusion, which would have resulted in the recovery of several million dollars in lost equity for Defendants' wrongful

PLAINTIFF'S F.R.C.P. 60 (b)(3) MOTION TO SET ASIDE JUDGMENT AND SETTLEMENT AGREEMENT FOR FRAUD, MISREPRESENTATION AND MISCONDUCT BY OPPOSING PARTY

17

1  foreclosure; Plaintiffs were further damaged by paying $100,000.00 for an option to

2  repurchase which they would not have otherwise agreed upon.

3      Consequently, due to Defendants' fraud, the Order Dismissing Action herein should be

4  set aside, and the Compromise, Settlement Agreement and Mutual Release should be

5  rescinded. Cal. Civil Code § 1689 (b)(1).  Moreover, regardless of whether Defendants'

6

7  misrepresentations constitute fraud, they certainly rise to the level of "...negligent

8  misrepresentation or other misconduct" justifying relief pursuant to Fed.R.Civ.Proc. 60(b)(3).

9      C. **The Settlement Agreement Must be Rescinded for Illegality.**

10          a. **Illegality and the right to rescission.**

11      A contract may be rescinded in the following cases:

12

13                                    * * *

14      (5)  If the contract is unlawful for causes which do not appear in its terms and
        conditions, and the parties are not equally at fault.
15

16  Cal. Civil Code § 1689(b).

17      The consideration and the object of a contract – that is, the thing the party receiving the
    consideration agrees to do or not to do [Civ. Code § 1595] – must be lawful. If either the
18  consideration or the object of the contract is unlawful, the contract is illegal. *McIntosh v.*
    *Mills,* 121 Cal.App.4th 333, 344, 346, 17 Cal.Rptr.3d 66 (2004).
19

20      A contract is illegal if the object or consideration is any of the following: Contrary to
    an express provision of law; contrary to the policy of express law, even though not expressly
21  prohibited; or otherwise contrary to good morals. *[Citations omittted.]*

22  *Forms of Pleading and Practice,* Matthew Bender, "Contracts" §140.24[1].

23          b. **The Settlement Agreement itself violated TILA by requiring the**

24  **recreation and repayment of the interest charges on the illegal loan.**

25

26

1    The Loan Transaction was subject to the provisions of the Truth in Lending Act, 15

2    U.S.C. § 1601 et seq, and the Federal Reserve Board's Regulation Z, 12 C.F.R. Pt. 226 et

3    seq. (hereinafter "Regulation Z"), and the Loan Transaction violated the provisions of the

4    Truth in Lending Act, and the applicable provisions of Regulation Z, for the following

5    reasons:

6

7        A.  The Loan Transaction was made primarily for personal purposes.

8        B.  15 U.S.C. § 1602(aa) of the Truth in Lending Act provides as follows:

9                A mortgage referred to in this subsection means a
         consumer credit transaction that is secured by the consumer's
10       principal dwelling, other than a residential mortgage transaction,
         a reverse mortgage transaction, or a transaction under an open
11       end credit plan, if –

12

13               (A) the annual percentage rate at consummation of the
         transaction will exceed by more than 10 percentage points the
14       yield on Treasury securities having comparable periods of
         maturity on the fifteenth day of the month immediately preceding
15       the month in which the application for the extension of credit is
         received by the creditor; or
16

17               (B) the total points and fees payable by the consumer at or
                     before closing will exceed the greater of –
18
                     1.  8 percent of the total loan amount; or
19
                     2.  $400.
20

21       Section 3 of the Note provides for an interest rate of 16.0%, payable interest only for a

22    period of five (5) years, with a balloon payment due on April 1, 2009. Section 4 (A) of the

23    Note provides for a late charge of 10% of the amount of any overdue payment, and Section 4

24    (B) of the Note provides that in the event of a default the applicable interest rate shall be "three

25    (3%) in excess of the interest rate set forth in Section 3." The application for the Loan

26

1  Transaction was received by Defendant IGL between approximately December 15, 2003 or

2  January 15, 2004. On December 15, 2003 the rate for 5 year Treasury securities was 3.26% and

3  on January 15, 2004 the rate for 5 year Treasury securities was 2.97%. Thus, pursuant to the

4  provisions of 15 U.S.C. § 1602(aa) (A) the annual percentage rate on the Loan in question could

5
6  not exceed 13.36% or 12.97%, depending upon when the application for the loan was received.

7  Accordingly, the annual percentage rate on the Loan exceeds the maximum permitted by 15

8  U.S.C. § Section 1602(aa)(A) and 12 C.F.R. § 226.32(a)(I).

9          C. The total points and fees paid by the Debtor amounted to approximately

10  $126,250.00, which was approximately 11.0% of the total amount of the loan. Therefore, the

11  total amount of points and fees exceed the 8% permitted by the provisions of 15 U.S.C.

12  §1602(aa) (B) and Regulation Z § 226.32(a) (ii).

13
          D. 15 U.S.C. § 1639(d) provides, in relevant part, that "[a] mortgage referred to in
14
15  section 1602(aa) of this title may not provide for an interest rate applicable after default that is

16  higher than the interest that applies before default. . . ." In the instant case, the Note provides that

17  in the event of a default the interest rate increases by 3% over the non-default rate of 16%, i.e., to

18  19%. Thus, the Note violates the provisions of 11 U.S.C. § 1639(d) and 12 C.F.R. § 236.32(d).

19          Because of the above-described TILA violations, Plaintiffs had the right to rescind the

20  loan, which they did by way of attorney Stinnett's September 22, 2006 letter. This resulted in the

21  voiding of the lien created by Plaintiffs' deed of trust, and of any obligation to pay interest. 15

22
23  U.S.C. § 1635(b); 12 C.F.R.§ 226.23(d)(1).

24          The only disputed matter standing in the way of a slam-dunk TILA violation was

25  Defendants' contention that they believed the subject loan was made for business purposes. In

26  fact, as Plaintiffs recently learned that Mr. Andrews has admitted, Defendants had no such belief.

PLAINTIFF'S F.R.C.P. 60 (b)(3) MOTION TO SET ASIDE                                                    20
JUDGMENT AND SETTLEMENT AGREEMENT FOR
FRAUD, MISREPRESENTATION AND  MISCONDUCT
BY OPPOSING PARTY

1    Consequently, the Settlement Agreement, which required the Plaintiffs to repay loan amounts

2    including unlawful interest and charges, and to repurchase their own home which was foreclosed

3    upon pursuant to an unlawful lien, itself was unlawful due to Defendants' insistence upon those

4    terms.

5

6              **c.  Plaintiffs' right to relief.**

7        As noted above, Plaintiffs were forced to sign the Settlement Agreement under threat of

8    immediate eviction in order to retain the hope of keeping their home.  As part of the Settlement

9    Agreement, Plaintiffs made a partial payment of $100,000.00 for the right to exercise an option to

10   repurchase the property, or set aside the foreclosure sale and repay the loans in full, including

11   interest arrearages.  As the Andrews admission makes clear, however, the loans violated TILA,

12   15 U.S.C. § 1601 *et seq.,* and California's Predatory Lending Law, Cal. Financial Code § 4970

13   *et seq.,* and hence were unlawful; the requirement that these loans be repaid in full constituted

14   unlawful consideration which was forced upon Plaintiffs by Defendants.

15

16       Plaintiffs were unaware of that Defendants acknowledged the personal nature of the loans,

17   and hence are entitled to relief.  *Tiedje v. Aluminum Paper Milling Co.* 46 Cal.2d 450, 454, 296

18   P.2d 554 (1956) [if illegality of a bargain is due to facts of which one party is justifiably ignorant

19   and the other party is not, the court may grant the ignorant party relief].  Indeed, such illegality

20   also constitutes "other misconduct" for which this Court may grant relief from the Order

21   GrantingThus, pursuant to Cal. Civ. Code § 1689(b), *supra,* Plaintiffs are entitled to rescind the

22   Settlement Agreement and move forward with the instant litigation.

23

24              **V.  CONCLUSION**

25       Contrary to Defendants' apparent belief, all is not fair in love and litigation.  Defendants

26   were required to have a good faith belief in the merit of their position in order to defend this

PLAINTIFF'S F.R.C.P. 60 (b)(3) MOTION TO SET ASIDE                                              21
JUDGMENT AND SETTLEMENT AGREEMENT FOR
FRAUD, MISREPRESENTATION AND MISCONDUCT
BY OPPOSING PARTY

1  action on the ground that the subject loan was a business loan rather than a consumer loan.  They

2  were not entitled to advance that position without a good faith belief in its truthfulness, and

3  thereby rob Plaintiffs of their home.  Based on the Andrews admission to the DRE, it is now

4  apparent that Defendants defrauded both Plaintiffs and this Court by adopting that position without

5
6  a good faith belief in its truthfulness, and in the process, forced the Plaintiffs into a contract (the

7  Settlement Agreement) which required Plaintiffs to pay unlawful consideration to Defendants in

8  order to recover their home.  For the foregoing reasons, Plaintiffs' Motion to Set Aside Judgment

9  and Settlement Agreement for Fraud, Misrepresentation and Other Misconduct should be

10  GRANTED.

11

12  Dated:  7/22/08

Fletcher Hartwell Hyler

13

14

15

16  Dated:  7/22/08

Sheryl Root Hyler

17

18

19

20

21

22

23

24

25

26

**PLAINTIFF'S F.R.C.P. 60 (b)(3) MOTION TO SET ASIDE
JUDGMENT AND SETTLEMENT AGREEMENT FOR
FRAUD, MISREPRESENTATION AND MISCONDUCT
BY OPPOSING PARTY**

22