1  Michael E. Stone, State Bar No. 46016
   Leo B. Siegel, State Bar No. 116841
2  LAW OFFICE OF MICHAEL E. STONE
   3425 S. Bascom Avenue, Suite I
3  Campbell, California 95008
   408/377-9899 Telephone
4  408/377-5270 Facsimile

5  Attorney for Defendants
   Investment Grade Loans, Inc., et al.
6

7                    UNITED STATES DISTRICT COURT

8                    NORTHERN DISTRICT OF CALIFORNIA

9
   FLETCHER HARTWELL HYLER and
10 SHERYL ROOT HYLER,                     CASE NO.: 07-CV-03180 WHA

11          Plaintiffs,                   **MEMORANDUM OF POINTS AND
                                          AUTHORITIES IN OPPOSITION
12                                        TO MOTION TO SET ASIDE
            vs.                           JUDGMENT AND SETTLEMENT
13                                        AGREEMENT**
   INVESTMENT GRADE LOANS, INC.,
14 et al.
            Defendants.
15                                        Hearing Date: August 28, 2008
                                          Time:  8:00 a.m.
16                                        Courtroom: 9
                                          Judge: Hon. William H. Alsup
17 _____/

18       Defendants INVESTMENT GRADE LOANS, INC., LINCOLN TRUST COMPANY

19 FBO, DOUG PICKERING, IRA, CHERN S. LIN, FELICIA LIN, JANICE TEMPEY, ROY

20 S.WOLF, THOMAS C. O'CONNELL, JR., JANICE K. O'GRADY, PENSCO TRUST

21 COMPANY AS CUSTODIAN FBO JOHN A. SNYDER IRA, PENSCO TRUST COMPANY

22 AS CUSTODIAN FBO PHIL AHLFELDT, IRA, AND JOHN STEVENS (hereinafter

23 collectively referred to as "IGL" or "Defendants") submit the following points and authorities in

24 opposition to the Hylers' Motion To Set Aside Judgment And Settlement Agreement:

25                              **I. INTRODUCTION**

26       In a brief to an appellate court (where the Hylers appealed the Unlawful Detainer

27 Judgment that their attorney stipulated to in court), the Defendants herein submitted that the real

28 issue in that appeal was "how many bites of the same apple does one guy get?" Yet, here he goes

1  again, and this time he is really grasping at straws.  In an effort to have this court set aside its

2  Sept. 6, 2007 Order Dismissing Action as well as their Compromise And Settlement Agreement

3  of August 21, 2007, they ask this court to:

4       1)  believe that they relied on "the apparent fact that the Defendants themselves

5  believed they had made the subject loan for business purposes" (quoted from paragraph 20 of

6  Mr. Hyler's declaration);

7       2)  make a finding that the Defendants did not have a such a belief, based on the plea

8  bargain agreement Andrew Lewis made with the California Department of Real Estate;

9       3)  ignore the express language of their settlement agreement, including the "known

10  and unknown" facts and claims;

11       4)  ignore the fact that California Government Code §11415.60 specifically provides

12  that in an administrative hearing decided by settlement "no evidence of an offer of compromise

13  or settlement made in settlement negotiations is admissible in an adjudicative proceeding or civil

14  action, whether as affirmative evidence, by way of impeachment, or for any other purpose";

15       5)  overlook the fact that in January of 2008, the Hylers novated the agreement they

16  now seek to set aside, thereby waiving any rescission claim; and

17       6)  forget that no where in their moving papers have the Hylers offered or tendered to

18  Defendants everything they paid out in reliance on the Compromise And Settlement (over six

19  million dollars in paying off the senior encumbrance, the property taxes, and the property

20  insurance, all of which were substantially in default by the Hylers), such a tender being a legal

21  pre-requisite to any rescission.

22       IGL submits that the Motion is so lacking in merit as to be found "frivolous" such that

23  IGL should be awarded and hereby requests, its attorney's and costs incurred in opposing the

24  motion, as a sanction per Federal Rule of Civil Procedure 11.

25  II. **LEGAL ARGUMENT**

26  *A. Plaintiffs Purported Reliance On Defendants' Belief*

27       The alleged "fraud" upon which Plaintiffs' motion is based is that Defendants did not

28  2

1  believe or have the understanding that the subject loan was made to the Hylers for "business

2  purposes"; and, the Hylers argue, had they known this "fact", they "would not have executed the

3  Settlement Agreement or stipulated to the Order Dismissing Action" (Plaintiffs' Motion, page

4  14, lines 17 through 19).

5       Defendants submit that not only did they actually believe or have the understanding that

6  the loan was made for "business purposes" (see Declaration of Andrew A. Lewis submitted

7  herewith), but they did not have a duty to disclose the alleged "fact" to Plaintiffs nor were

8  Plaintiffs induced to enter the Settlement by any belief or understanding of Defendants.

9       As the Settlement Agreement itself states (attached as Exhibit "F" to the Hyler

10 Declaration In Support Of Plaintiffs' Motion), the Hylers "contest the validity of the foreclosure,

11 the right of IGL to institute eviction proceedings and all other rights IGL has contended that it

12 has in the property and/or against Hyler", but "to resolve all their disputes and agree upon a

13 settlement of any and all matters in dispute amongst them", they "extinguish their mutual rights

14 and claims arising from any and all disputes and differences between them and that each has or

15 may have against each other, in any way relating to their Dispute and the Action". They then

16 released Defendants (and Defendants released them) "from any and all rights, claims, demands,

17 damages, debts, liabilities, accounts, reckonings, obligations, costs, expenses, liens, actions, and

18 causes of action of every kind and nature whatsoever, whether known or unknown, suspected or

19 unsuspected", etc. (paragraph 1 of Exhibit "F", the Settlement Agreement).  Moreover, the

20 consideration for the dismissal of the Action, per paragraph 3, was expressly made to be the 60

21 day option given to the Hylers (from August 21, 2007) to repurchase the property.  They got what

22 they bargained for, the option, and as they acknowledge in their Motion, they did not exercise it.

23       In United States ex rel. Dianne Giles v. Lyle Sardie et al. (Cent. Dist. of Calif., 2000) 191

24 F. Supp.2d 1128, a party to a suit sought to invalidate his settlement agreement and release of

25 claims on much of the same basis as the Hylers herein ( a claim of "fraud" and an

26 uncommunicated subjective intention).  And the Court gave two basis for denying the attempt,

27 both of which apply to the Hylers' motion: first, "a party seeking rescission based on fraudulent

28                                                3

1  nondisclosure must show: (1) the defendant failed to disclose a material fact which he knew or

2  believed to be true, and (2) the defendant had a duty to disclose that fact" (IBID at 1132), and

3  secondly, a party is not allowed to offer parol evidence as to his uncommunicated subjective

4  intention when the written terms of the agreement are clear.

5          Applying those to the Motion at hand, the Hylers have not met their burden of showing

6  that Defendants had a duty to disclose to Plaintiffs that Andrew Lewis (the individual who

7  entered into the D.R.E. Stipulation) had a belief that the loan was not a business purpose loan;

8  nor can the Hylers' uncommunicated subjective intention (to not dismiss the case in

9  consideration for the 60 day option, should they learn that Mr. Lewis held a different belief or

10  understanding) be used to avoid the clear written terms of the Settlement Agreement.  As in the

11  Giles case, the attempt to set aside the clear and unambiguous agreement should be denied.

12     *B.  Plaintiffs Cannot Meet Their Burden Of Proof That Defendants Did Not Have a Belief Or*
        *Understanding That The Loan Was For Buying Business Purposes*

13

14          Even if Plaintiffs could have used the Stipulation of Andrew Lewis in the D.R.E.

15  proceeding (discussed further below), it does not constitute evidence of what Defendants

16  believed or did not believe as to the purpose of the loan to Hylers.  No where in the Stipulation

17  does Mr. Lewis, never mind any of these Defendants, state that their original understanding or

18  belief was that the loan was intended for personal, not business, purposes.  Even the D.R.E.

19  Accusation does not state that; only that it is a "covered loan" under the Financial Code because

20  it (1) was secured by a owner occupied principal dwelling; (2) the principal balance of the loan

21  was under $250,000; (3) the interest rate exceeded the Treasury rate plus 8%; and (4) the total

22  points and fees exceed 6% of the loan amount (see paragraph XXV of the Accusation, attached

23  as Exhibit "H" to Plaintiffs' Motion).

24          To get to where they want to be from that Stipulation, the Plaintiffs backhandly argue that

25  the loan which was the subject of the D.R.E. proceeding (the $100,000 loan) was "made pursuant

26  to the same application" as the loan that is the subject of this TILA case (page 13, lines 25 & 26

27  of Motion) and that the stipulation was an admission by Mr. Lewis that the loan "was a consumer

28                                          4

1  loan rather than business loan"( page 14, lines 1 and 2 of Motion).  And neither is correct.  There

2  is no evidence to support the "same application" argument (obviously because the only

3  "application" was the one submitted to IGL by the Hylers' agent, Gary Bowers, described in

4  Exhibit "D", Defendants' Memorandum In Opposition To Request For Preliminary Injunction, at

5  page 5, lines 2-6, showing that the loan was requested as a business purpose loan).  Moreover, as

6  Mr. Lewis makes clear in his Declaration submitted herewith, he entered the Stipulation not as an

7  admission of anything, but merely as an acceptance of the plea bargain offered by the D.R.E.

8  (who opined that Mr. Hyler was not a "victim of predatory lending" but more of a "predatory

9  borrower").  Mr. Lewis confirms in no uncertain terms that it was, is, and always has been his

10  belief and understanding that the loan was made for business purposes.

11  C. *The Express Language Of The Hylers Settlement Agreement Is Unambiguous And Bars The*
   *Hylers' Attempt*

12

13       The Settlement Agreement that the Hylers now seek to avoid, despite having already

14  reaped the benefits ( an option to repurchase or reinstate, and continued possession during the

15  interim) contained a California Civil Code §1542 waiver (extending it to claims that a party does

16  not know or suspect to exist in his favor at the time of executing the release, which if known to

17  him must have materially affected his decision to settle).  It also contained a provision that no

18  oral representations shall be of any force or effect unless contained in the written agreement or a

19  written modification signed by all parties.

20       No where does the Agreement state that the Hylers entered it on the belief that

21  Defendants believed their loan to be a business purpose loan; nor that this was a material

22  representation made to them that they relied on in entering the Settlement.

23       In Winet v. Price (1992), 4 CalApp 4th 1159, where a party to a settlement and release

24  agreement tried to get out of it based on his subjective intent (and the language was similar, if not

25  identical, to the agreement at hand), the Court held that evidence of an undisclosed intent is

26  irrelevant to determining the meaning of contractual language.  The Court went on to hold that

27  the Plaintiff expressly assumed the risk of unknown claims or facts; was represented by counsel

28                                                        5

1   (relying on counsel's advice, not the uncommunicated intention); and was estopped from

2   claiming the agreement to be contrary to his unexpressed intentions or understanding. And Mr.

3   Hyler, like the Plaintiff in the Winet case, was not "an unsophisticated claimant who is presented

4   with a form release on a "take it or leave it basis" and signs the release without the benefit of

5   counsel, conferring a windfall on an insurance company. To the contrary, Winet [Hyler] appears

6   to be a sophisticated businessman who, with the benefit of counsel, specifically negotiated the

7   subject release in an arms-length transaction." (IBID at 1170)

8   *D. The Agreement Between The Department Of Real Estate And Andrew Lewis Cannot Be Used Herein As Evidence Of Anything*

9
10  California Government Code §11415.60, pertaining to administrative proceedings such as

    the D.R.E. Accusation involving Andrew Lewis, provides in full as follows:
11

12      (a) An agency may formulate and issue a decision by settlement, pursuant to an
        agreement of the parties, without conducting an adjudicative proceeding. Subject to
13      subdivision (c), the settlement may be on any terms the parties determine are appropriate.
        Notwithstanding any other provision of law, no evidence of an offer of compromise or
14      settlement made in settlement negotiations is admissible in an adjudicative proceeding or
        civil action, whether as affirmative evidence, by way of impeachment, or for any other
15      purpose, and no evidence of conduct or statements made in settlement negotiations is
        admissible to prove liability for any loss or damage except to the extent provided in
16      Section 1152 of the Evidence Code. Nothing in this subdivision makes inadmissible any
        public document created by a public agency.
17

18      (b) A settlement may be made before or after issuance of an agency pleading, except that
        in an adjudicative proceeding to determine whether an occupational license should be
19      revoked, suspended, limited, or conditioned, a settlement may not be made before
        issuance of the agency pleading. A settlement may be made before, during, or after the
20      hearing.

21      (c) A settlement is subject to any necessary agency approval. An agency head may
        delegate the power to approve a settlement. The terms of a settlement may not be contrary
22      to statute or regulation, except that the settlement may include sanctions the agency
        would otherwise lack power to impose.

23
        Section 1152 of the California Evidence Code provides as follows:
24
            (a) Evidence that a person has, in compromise or from
25          humanitarian motives, furnished or offered or promised to furnish
            money or any other thing, act, or service to another who has
26          sustained or will sustain or claims that he or she has sustained or
            will sustain loss or damage, as well as any conduct or statements
27

28                                          6

1   made in negotiation thereof, is inadmissible to prove his or her
liability for the loss or damage or any part of it.

2       (b) In the event that evidence of an offer to compromise is
admitted in an action for breach of the covenant of good faith and

3   fair dealing or violation of subdivision (h) of Section 790.03 of the
Insurance Code, then at the request of the party against whom the

4   evidence is admitted, or at the request of the party who made the
offer to compromise that was admitted, evidence relating to any other

5   offer or counteroffer to compromise the same or substantially the
same claimed loss or damage shall also be admissible for the same

6   purpose as the initial evidence regarding settlement.  Other than as
may be admitted in an action for breach of the covenant of good faith

7   and fair dealing or violation of subdivision (h) of Section 790.03
of the Insurance Code, evidence of settlement offers shall not be

8   admitted in a motion  for a new trial, in any proceeding involving an
additur or remittitur, or on appeal.

9       (c) This section does not affect the admissibility of evidence of
any of the following:

10      (1) Partial satisfaction of an asserted claim or demand without
questioning its validity when such evidence is offered to prove the

11  validity of the claim.

12      (2) A debtor's payment or promise to pay all or a part of his or
her preexisting debt when such evidence is offered to prove the

13  creation of a new duty on his or her part or a revival of his or her
preexisting duty.

14

15

16      The obvious policy of both statutory provisions, relating to inadmissability of

17  compromise offers and settlement agreements, is to avoid deterring parties from trying to settle

18  disputes and to facilitate candid discussions and encourage settlements, which might well be

19  discouraged if a party knew that they might later be used to prove the invalidity of some other

20  claim which he may wish to assert.  Fieldson Associates, Inc. v. Whitecliff Laboratories (1969)

21  276 Cal.App.2d 770.

22

23      Whether or not the Hylers were aware of the Stipulation And Agreement entered by

24  Mr. Lewis with the D.R.E., when they settled the within case, is irrelevant both now and at the

25  time of execution.  That settlement agreement was and is statutorily inadmissable and unusable

26  as evidence of anything in this TILA case.

27

28                                          7

*E.  Assuming, Arguendo, That The Hylers Had Any Rescission Rights, They Waived Them As To The August 2007 Agreement When They Entered Into The Subsequent January, 2008 Agreement*

As part of the basis for their motion to set aside their settlement agreement and the dismissal entered pursuant to it, Plaintiffs do not state when they learned of Mr. Lewis' D.R.E. agreement, but only that "Plaintiffs discovered Mr. Andrews' [SIC] admission substantially after executing the Settlement Agreement." (page 14 of Motion, lines 15 and 16).  They also do not disclose to this Court that they subsequently novated that Settlement Agreement with yet another written agreement with IGL.  That subsequent agreement was entered into on January 28, 2008 and is attached to the Declaration of Andrew A. Lewis submitted herewith.

It has long been a rule in California that a right to rescind a contact is waived if the contract is affirmed with knowledge of the circumstances that may give rise to a rescission.  Neet v. Holmes (1944) 25 Cal.2d 447.  It is submitted that when the Hylers entered the January 28, 2008 agreement, wherein they reaffirmed their agreement to pay the remaining $1.9 million unpaid under the August 2007 Settlement Agreement (in consideration for an extension of their option to repurchase under the Settlement Agreement and further continued possession in the interim) they waived any right they had to rescind the 2007 Settlement Agreement. And if they are now going to contend that they did not learn of the D.R.E. Stipulation until after the January 2008 agreement, then they still have a twofold problem: one, prove a reasonable excuse as to why they did not discover the D.R.E. Stipulation earlier, since they were the original complaining party to the D.R.E.; and two, prove that they are also entitled to rescind the January 2008 agreement, since it novated and replaced the earlier August 2007 Agreement.  Their moving papers certainly do neither.

8

*F. No Where In Plaintiffs' Moving Papers Do They Offer To Restore To Defendants All Sums Expended By Defendants In Reliance On The Settlement Agreement*

As Plaintiffs are well aware, when Defendants foreclosed on the subject property and Plaintiffs failed to perform on any of their post-foreclosure agreements, the property was subject to a senior encumbrance of approximately $5.5 million, and which was in default. In the January 2008 agreement (attached to the Andrew A. Lewis Declaration as an exhibit) both the amount and the pending foreclosure sale date are expressly mentioned. And as Plaintiffs are further aware, Defendants were compelled to pay off that loan to prevent being foreclosed out themselves, as well as to cure all property tax defaults and pay for fire insurance.

Per California Civil Code §1691, a party seeking to rescind an agreement must not only give notice of rescission to the party as to whom he rescinds, but also restore to the other party everything of value received under the agreement. In the case at hand, Plaintiffs would have to not only offer to restore Defendants' undisputed principal amount of the subject loan, but also all the monies paid by Defendants on the property after the Settlement Agreement. Yet, as the Court will note, no where in their Motion papers do they offer to restore anything to Defendants.

In fact, as the Court will recall, the reason that Defendants were allowed to go ahead with their foreclosure after Plaintiffs' motion for a preliminary injunction was because twice Plaintiffs failed to come up with even the $835,000 that they conceded was due to Defendants: once, following a stipulation entered in court before the August 1, 2007 injunction hearing, and the second time following the Court's conditional grant of the injunction if they posted said amount in either cash or a bond by August 15, 2007. The Settlement Agreement, of which they now seek relief, was only entered after that foreclosure, to give the Plaintiffs yet another 60 days, plus another four months in a series of further agreements reached after the August 2007 Agreement (one in the Unlawful Detainer action, put on the record at time of trial; another in an

9

1  agreement to dely execution of a post-judgment writ of possession; and finally the January 28,

2  2008 agreement provided herewith).  Not once did they fully perform their end of the agreement,

3  eventually costing Defendants millions of dollars to save their investment.  And now here the

4  Plaintiffs are again, seeking more delays and time without offering payment of even the amounts

5  they would be required to pay even if they prevailed on all issues under the TILA case.

6

7  *G. SANCTIONS*

8  For all the reasons given above, any one of which defeats Plaintiffs' motion, this Court

9  is respectfully requested to not only deny the motion, but find that it is so lacking in merit that it

10  is frivolous.  The Court is then requested to either sanction the Plaintiffs by awarding Defendants

11  the reasonable attorney's fees and expenses incurred in defending against it, or order Plaintiffs to

12  show cause why their making of their Motion has not violated Federal Rule 11 (b) such that

13  sanctions should be imposed [per Federal Rule 11 (c) (3)].

14

15  **III.  CONCLUSION**

16  As a matter of law, Plaintiffs' Motion To Set Aside Judgment And Settlement

17  Agreement should be denied.  No evidentiary hearing on the motion is necessary or warranted.

18  And if the Court is disinclined to award sanctions at the time of its denial of Plaintiffs' motion ,

19  then Defendants respectfully suggest that it should order Plaintiffs to show cause why they

20  should not be sanctioned for filing a frivolous motion and be ordered to pay Defendants'

21  attorney's fees and costs.

22

23  Respectfully submitted,

24  Dated: July 29, 2008    LAW OFFICES OF MICHAEL E. STONE

25

26  _____
MICHAEL E. STONE, Attorney for Defendants
Investment Grade Loans, Inc., et al

27

28  10